3 W    335
217       73
217    ¹ 75

# Blackstone *against* Blackstone.

To my friend I, my executor, I give and bequeath all my two hundred and fifty shares of capital stock which I hold in the Union Bank of Pennsylvania, together with such interest as may have accrued thereon from the last dividend immediately preceding my decease, as also, &c., all which I give and bequeath to my said executor in trust to and for the use of my two grandsons, to wit, H and J, to be transferred and paid unto them when they shall respectively arrive at the age of twenty-one years, or to their legal representatives. Held : that this is a specific legacy, which is extinguished by a sale of the stock in the lifetime of the testator.

The annihilation of a specific legacy, or such a change in its state as makes it another thing, annuls the bequest, for reasons paramount to considerations of intention.

ERROR to the common pleas of *Fayette* county.

This was an action for a legacy by Henry Blackstone against James Hurst, executor of James Blackstone, in which the following facts were agreed to by the parties, to be considered in the nature of a special verdict.

On the 4th of September 1819, James Blackstone, the testator of the defendant, made his last will and testament, which was duly proved on the 19th of November 1822, and letters testamentary thereon were granted to the defendant on the same day. In which was the following:

" Item. To my trusty friend and son-in-law, James Hurst, esquire, my hereinafter-named executor, I give and bequeath all my two hundred and fifty shares of capital stock which I hold in the Union

[Blackstone v. Blackstone.]

Bank of Pennsylvania, together with such interest as may have accrued thereon from the last dividend immediately preceding my decease, as also the further sum of 7000 dollars, with lawful interest on the same from the day of my interment ; all which I give and bequeath to my said executor, in trust to and for the use of my two grandsons, to wit, Henry Blackstone and James Blackstone, the sons of my deceased son, James Blackstone, to be transferred and paid unto them when they shall respectively arrive at the full age of twenty-one years, or to their legal representatives."

The plaintiff proposes to prove by witnesses that after the making of the will of James Blackstone, the testator of the defendant, application was made to him, the said testator, to purchase of him the two hundred and fifty shares of stock held by him in the Union Bank of Pennsylvania : that at first he declined to sell because he had devised the said stock in his will to his two grandsons, Henry and James Blackstone, the plaintiffs : that afterwards, upon being informed there was danger of loss upon the stock, and that it would be for the advantage of the said legatees to sell the said stock and take a bond in lieu thereof, he sold the same to Isaac Meason and Daniel Rogers, and took their bond for the same, agreed to be paid therefor dated May 12th, 1821, declaring at the same time that the said bond should go to his said grandsons in lieu of the said stock, and also that the said bond remained wholly unpaid at the time of the death of the testator, and that the bond has come to the hands of the defendant, the executor.

The defendant, admitting said testimony and the facts stated to be true, objects to the admission thereof; whereupon it is agreed that the question of the competency of the said testimony shall be decided by the court : and if the court shall be of opinion that the same ought to go to the jury, the court shall decide on the effect thereof, and give judgment accordingly ; and if such judgment shall be for the plaintiffs, the amount for which execution may issue will be calculated and ascertained by the attorneys of the parties ; or if they cannot agree, they will take to their assistance the prothonotary of the court.

The court below rendered a judgment for the plaintiffs.

*Alexander*, with whom was *Forward*, for plaintiff in error, cited, Becher *v.* Becher, 7 *Johns.* 99 ; Clark *v.* Hering, 5 *Binn.* 35 ; Brown *v.* Furor, 4 *Serg. & Rawle* 216 ; 2 *Rawle* 191 ; M'Culloch *v.* Sample, 1 *Penns. Rep.* 423 ; Wilson *v.* Wilson, 3 *Binn.* 557. That it was specific, and therefore adeemed, cited, *Swin. on Wills* 544, 547; 1 *Saund.* 277, *note* 4 ; Walton *v.* Walton, 7 *Johns. Chan. Rep.* 258 ; 1 *Rop. on Leg.* 238 ; Cuthburt *v.* Cuthburt, 3 *Yeates* 486 ; 4 *Ves.* 568; 2 *P. Wms* 328 ; 3 *Ves.* 309 ; Moritz *v.* Brough, 16 *Serg. & Rawle* 403 ; Lawson *v.* Morrison, 2 *Dall.* 289 ; Haverd *v.* Davis, 2 *Binn.* 414 ; Sword *v.* Adams, 3 *Yeates* 34 ; Torbert *v.* Twining, 1 *Yeates*

[Blackstone v. Blackstone.]

437 ; Iddings *v.* Iddings, 7 *Serg. & Rawle*, 111 ; *Went. Executors* 55 ; Case of Priscilla Yarnall, 4 *Rawle* 46.

*Ewing,* for defendant in error, contended, that the question of ademption depended upon the intention of the testator, and cited, *Swin. on Wills* 547, 548, 549 ; *Amb. Rep.* 401 ; 13 *Ves.* 336 ; *Eq. Ca. Ab.* 302 ; *Gilb. Eq. Rep.* 82 ; 1 *P. Wms* 461 ; 2 *P. Wms* 469 ; 3 *P. Wms* 384 ; *Talb. Cas.* 227 ; 1 *Ves.* 273 ; 2 *Ves.* 623 ; 3 *Wood. App.* 8 ; 3 *Wood.* 535, note (*a*) ; 2 *Bro. Chan.* 108 ; 2 *Cox* 180 ; 9 *Ves.* 360 ; 4 *Mad. Rep.* 383 ; 1 *Ves.* 271 ; 1 *Roper* 241; Walton *v.* Walton, 7 *Johns. Cha. Rep.* 258 ; 6 *Pick.* 56.

The opinion of the Court was delivered by

Gibson, C. J.—The modern decisions on this head can be reconciled to the doctrine of Swinburne but by understanding him to speak exclusively in reference to pecuniary legacies. It is certainly now held for clear law, that a legacy properly specific, and not merely specific in its nature by being charged on a specific fund, is adeemed, or, to speak more properly, extinguished, by any change of its state or form, effected, not by fraud or operation of law, but by the act of the testator, whatever be its purpose, which makes the *corpus* of the legacy, at his death, a different thing from what is indicated by the terms of the description. Swinburne recognizes no distinction in this respect between pecuniary and specific legacies of debts, annuities or stock ; but puts the question of ademption exclusively on the fact of intention, which, in respect to this particular sort of ademption, is an immaterial circumstance. Thus he says (part 7, section 20), that the bequest of a bond or debt is not extinguished by voluntary payment of it ; or even by payment exacted, if it appear by the testator's declarations or actions that no extinguishment was contemplated. The cases cited in illustration of his position by his learned editor and annotator, are undoubted instances of the pecuniary class. The bequest in Orme *v.* Smith, 2 *Vern.* 681, more fully stated in Mr Powell's note, was certainly such, being a bequest of 500 pounds *in numero ;* " that is to say," proceeds the testator, " the bond and judgment he gave me for 400 pounds, and 100 pounds in money." The bond and judgment were evidently not treated as a specific subject of the testator's bounty, but as the anticipated medium of its satisfaction ; and the receipt of the debt by him seems therefore to have been properly disregarded as a proof of ademption. And in Thomond *v.* Suffolk, 1 *P. Wms* 461, where the testator had bequeathed two several bond debts of 2000 pounds each, with proviso, " that in case all or any part of these two sums should be *paid in* before the testatrix's death, then the said testatrix gives to the said legatee 4000 pounds, or so much money as the principal money so paid in should amount to," it was held that a *release* of one of the debts was not an ademption *pro tanto,* and evidently because the bonds were spoken of but as a fund, the object being to secure the

[Blackstone v. Blackstone.]

legacy from failing in any event. For the same reason a bequest of 40 pounds out of a debt due the testatrix was held, in Ford *v.* Fleming, 2 *P. Wms* 469, not to be adeemed by being called in, it being presumed that the debt was considered to be in danger. The question was put on the ground of intention, and the legacy was a pecuniary one for reasons that will appear in the cases to be presently quoted. In Rider *v.* Wager, *Ibid.* 329, where the legacy was *part* of a debt, the decree that a receipt of the debt in the testator's lifetime did not defeat the bequest, was rested expressly on the difference between pecuniary and specific legacies. Finally, in Partridge *v.* Partridge, *Cases temp. Talb.* 226, the testator having had 1800 pounds Capital South Sea stock at the date of his will, by which he bequeathed 1000 pounds of it, but having subsequently reduced the quantity to 200 pounds, and then increased it to 1600 pounds, three-fourths of which were turned into annuities by an intervening act of parliament, it was determined that neither the intermediate disposal, nor the involuntary transmutation, was an ademption of any part of the legacy. In respect to this case it is to be remarked that the bequest was not of the identical stock had at the date of the will, which is material (*Roper on Legacies* 239), and that the stock or its substitute had at the death equally answered the description; that the transmutation being by operation of law would not have affected the question of ademption even in the case of a specific legacy; and that for these reasons Lord Talbot considered the legacy to be a pecuniary one. In Swinburne's day, then, the principles of the present question had not been carried out. That the distinction since taken between general and specific bequests of money or securities should not be noticed in his work, will not seem strange to those who consider that it was written two hundred and fifty years ago, when the distinction was unknown. But that the annihilation of a specific legacy, or such a change in its state as makes it another thing, annuls the bequest, for reasons paramount to considerations of intention, is now too firmly settled to be questioned. The principle is definitively established by Sleech *v.* Thornington, 2 *Ves.* 561; Drinkwater *v.* Falconer, *Ibid.* 623; Humphreys *v.* Humphreys, 2 *Cox* 184, and Birch *v.* Baker, *Mosely* 373.(*a*) The remaining question is, whether the legacy before us is a specific one. The bequest is of " all *my* two hundred and fifty shares of capital stock *which I hold* in the Union Bank of Pennsylvania." The " which I hold" certainly individuate the stock as a *corpus* with as much precision as would the words " standing in my name," which made the bequest specific in Sleech *v.* Thornington; or the words, "all the stock which *I have* in the three per cents," which was allowed to have the same effect in Humphreys *v.* Humphreys; and it is even more specific than the words in Drinkwater *v.* Falconer, " to be paid *out of* my dividends of 400 pounds in the joint stock of South Sea annuities, *now* standing

(*a*) See, to the same effect, Ashburner *v.* M'Guire, 2 *Bro. Ch.* 108.

[Blackstone v. Blackstone.]

in the company's books in my name," which were held to be sufficiently so, though the stock was described as a fund for payment, because the residue was given in nearly the same terms, and charged with the preceding bequest.   It is certainly true that the presumption of intention is favourable to general legacies in the first instance, and that it requires clear proofs of a restrictive intention to repel it ; but the word " *my*" prefixed to the word " *annuities*" or stock, has always been held sufficient of itself to do so, though the mere possession of such annuities or stock at the date of the will, without words of reference to fix its identity as the subject of bequest, has come short of it. (*a*)   But what is decisive here is, that the stock was directed to be " transferred" by the executors to the legatees on their arrival at full age.   Beside the dividend accruing at the testator's death is given in the same way : all which shows it to have been his expectation and intent to die possessed of this identical stock, and to transmit it specifically to the legatees.   The legacy then was a specific one ; and whatever was the motive for its extinction or change of being, whether to destroy it or to preserve it for the legatees ; and whatever be the evidence of such motive ; it ceased to have the specific existence ascribed to it in the will, and neither the bond taken as a substitute for it, nor its value, can be demanded from the testator's estate.

Judgment below reversed, and judgment here for defendants.

Justice KENNEDY took no part in the decision, having been counsel in the cause.

Justice HUSTON was absent in consequence of indisposition.

(*a*)   See also Barton *v.* Cook, 5 *Ves.* 461 ; Norris *v.* Harrison, 2 *Madd.* 280 ; and Choat *v.* Yeates, 2 *Jacob & W.* 102.