## Snyder's Estate.

*Wills—Specific legacies—Latent ambiguity.*

Where testatrix bequeathed to legatees a certain amount of bank stock of a bank which she designates as the "Second National Bank of Mercer," and it appears that there was no such bank of that name in the town of Mercer, a latent ambiguity in the will is disclosed, and evidence dehors it may be admitted to show that the second national bank to be established in the town was the "Farmers' & Mechanics' National Bank of Mercer" and that this bank was known to the testatrix and to other persons in the town as the "Second National Bank."

*Wills—Specific legacies—Bank stock.*

A specific legacy is a gift by will of a specific article or part of the testator's estate, which is identified and distinguished from all other things of the same kind, and which may be satisfied only by the delivery of the particular thing. The law leans against specific legacies and to general ones.

A legacy of stock, of whatever denomination, is not prima facie specific, but is a general legacy; although the testator may have had stock of the description mentioned sufficient to answer the bequest.

Testatrix by her will directed as follows: "I also give and bequeath to S. six hundred dollars of bank stock of the Second National Bank of Mercer . . . . I give and bequeath to my beloved brother P. two thousand dollars of the bank stock of bank referred to above." At the time the will was executed testatrix was the owner of twenty-six shares of the stock of the bank so known by her. After she executed her will she exchanged the twenty-six shares of bank stock for stock in a trust company. *Held*, that the legacies were general, and that the legatees were entitled in distribution to an amount equal to plaintiff's twenty-six shares of the bank stock at its market value.

Argued Oct. 13, 1906. Appeal, No. 79, Oct. T., 1906, by Winfield S. George, from decree of O. C. Mercer Co., April T., 1905, dismissing exceptions to auditor's report in Estate of Ann Eliza Snyder, deceased. Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ. Affirmed.

Exceptions to report of J. R. W. Baker, Esq., auditor.
The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*E. N. Baer*, with him *J. G. White*, for appellant.—It is well settled that a legacy properly specific and not merely specific in its nature by being charged on a specific fund is adeemed by its sale or change of form by the act of the testator in his lifetime: Blackstone v. Blackstone, 3 Watts, 335, 337; Ludlam's Estate, 13 Pa. 188; Hoke v. Herman, 21 Pa. 301.

The claim that the words " Second National Bank " were written in the bequest by mistake and that such mistake can be proved and corrected by parol evidence and the words " Farmers' & Mechanics' National Bank " substituted, is contrary to the established rules of interpretation and will not be permitted : Wallize v. Wallize, 55 Pa. 242, 248; Sauer v. Mollinger, 138 Pa. 338; Best v. Hammond, 55 Pa. 409; Robinson v. Williams, 1 W. N. C. 337.

*Q. A. Gordon*, for appellees.

OPINION BY MR. JUSTICE BROWN, February 25, 1907 :

At the time the testatrix, Ann Eliza Snyder, executed her will she was the owner of twenty-six shares of the capital stock of the Farmers' & Mechanics' National Bank of Mercer of the par value of $100 each. Among other bequests are the following : " I also give and bequeath to the said Ina Stuart six hundred dollars of bank stock of the Second National Bank of Mercer, said bank being located in Mercer, Mercer County, Pa. . . . . I give and bequeath to my beloved brother Peter Myers two thousand dollars of the Bank stock of Bank referred to above."

It is admitted that there did not exist at the time the will was written, or at any other time, a bank in Mercer under the corporate name of the " Second National Bank of Mercer." From this misdescription of the stock there arose a latent ambiguity in the will and evidence dehors it was properly admitted to explain it and to show what stock was the subject of the bequests: Best v. Hammond, 55 Pa. 409. Under the admissions before the auditor and the testimony offered, there can be no doubt that she meant by the " Second National Bank of Mercer " the Farmers' & Mechanics' National Bank of Mercer. The first national bank to be established in that place was the First National Bank of Mercer, organized in 1864, and carrying

on business ever since. The second national bank to be established in the town was the Farmers' & Mechanics' National Bank of Mercer, organized in 1874. It was at this bank, of which the testatrix was a stockholder, that she transacted all of her banking business. She acquired the stock in it from her husband, Jacob Snyder, deceased, who gave it to her by his will dated April 14, 1879. In it he calls the stock "the capital stock of the Second National Bank stock of Mercer said bank being located in Mercer, Mercer County and State of Pennsylvania." The Farmers' & Mechanics' National Bank undoubtedly, and naturally, too, was known and designated by the testatrix and others as the Second National Bank, because in point of time it was the second national banking institution to be organized in the town. It is, therefore, clear that when she referred to bank stock as stock of the Second National Bank of Mercer, she meant stock of the Farmers' & Mechanics' National Bank of that place.

After she executed her will, the testatrix exchanged her twenty-six shares of the Farmers' & Mechanics' National Bank stock for stock in the Mercer County Trust Company, and, as she did not have the bank stock at the time of her death, the appellant, her residuary legatee, insisting that the legacies to the appellees were specific, contends that they were adeemed, and that the sums awarded to them should have passed to him.

The law leans against specific legacies and to general ones: Blackstone v. Blackstone, 3 Watts, 335; Ludlam's Estate, 13 Pa. 187; Balliet's Appeal, 14 Pa. 451. "A specific legacy or devise is a gift by will of a specific article or part of the testator's estate, which is identified and distinguished from all other things of the same kind, and which may be satisfied only by the delivery of the particular thing." 18 Am. & Eng. Ency. of Law, 2d ed., 714. By these two bequests the testatrix does not give to the legatees specific shares of bank stock belonging to her, but gives to each of them, in general terms, a certain amount of stock, without identifying any particular shares or distinguishing those given from all others of the same kind of stock. Under all the authorities these are general legacies.

In Blackstone v. Blackstone, supra, 335, the words of the bequest were: "I give and bequeath all my two hundred

and fifty shares of capital stock which I hold in the Union Bank of Pennsylvania." GIBSON, Chief Justice, in holding that this legacy was specific, said: "The remaining question is, whether the legacy before us is a specific one. The bequest is of 'all my two hundred and fifty shares of capital stock which I hold in the Union Bank of Pennsylvania.' The words 'which I hold' certainly individuate the stock as a corpus with as much precision as would the words 'standing in my name,' which made the bequest specific in Sleech v. Thornington, or the words 'all the stock which I have in the three per cents,' which was allowed to have the same effect in Humphreys v. Humphreys, and it is even more specific than the words in Drinkwater v. Falconer, 'to be paid out of my dividends of 400 1. in the joint stock of South Sea annuities, now standing in the company's books in my name,' which were held to be sufficiently so, though the stock was described as a fund for payment, because the residue was given in nearly the same terms, and charged with the preceding bequest. It is certainly true that the presumption of intention is favorable to general legacies in the first instance, and that it requires clear proof of a restrictive intention to repel it; but the word 'my' prefixed to the word 'annuities' or stock, has always been held sufficient of itself to do so, though the mere possession of such annuities or stock at the date of the will, without words of reference to fix its identity as the subject of bequest, has come short of it." The bequest in Ludlam's Estate, supra, as taken from the opinion of Judge KING in the court below, 1 Parsons' Select Equity Cases, 116, was: "One thousand dollars of the United States six per cent. stock or loan of the year 1812, standing in my name on the books of the loan office, Pennsylvania, as per certificate No. 269." Of this bequest it was said by COULTER, J.: "We come then to the question whether this was a specific legacy or not. If it was specific (of the very corpus of the United States stock held by the testator), then it was adeemed; because the corpus of that stock was extinguished and paid to the testator before his death. The words of the bequest would seem to leave little doubt on this subject: 'One thousand dollars of the United States six per cent. stock of the year 1812, standing in my name in the loan-office Penn'a, as per certificate

No. 269.' It is not a bequest of $1,000, payable out of stock held by him; but $1,000 of stock which stands in his name in the loan-office, by certificate 269. It is the very thing itself, the corpus of the stock, that is bequeathed. In Blackstone v. Blackstone, 3 Watts, 337, where the bequest was 'of all my 250 shares of stock which I hold in the bank, together with such interest as may have accrued thereon,' and where it appeared that testator sold the stock in his lifetime, and took a bond for the same, although there was evidence that the testator declared the bond should be in lieu of the stock, it was ruled that the legacy was adeemed. There, the change of the corpus of the legacy was from bank stock into a bond; here, the change is from government stock into money, which mingled itself with the other money of the testator. There, it was 'my bank stock which I hold;' here, it is 'my government stock, standing, in my name, on the books,' etc., 'as per certificate 269.' One does not individuate the corpus of the gift more distinctly than the other, and each is so definite as to defy mistake. These very words, to wit: 'stock standing in my name,' were held in Barton v. Cooke, 5 Ves. 461, to make a legacy specific." But such are not the legacies here. There is nothing on the face of the bequests to show that any particular shares of the bank stock should pass to the legatees. The testatrix does not refer to them as "my bank stock," or as stock "which I hold." The bequests are simply of twenty-six hundred dollars of bank stock. In Sponsler's Appeal, 107 Pa. 95, the testator had at the time of the execution of his will and at his death but fifteen shares of second preferred Cumberland Valley Railroad stock. A bequest to Alice Rheem of "fifteen shares of second preferred Cumberland Valley Railroad stock" was held to be a general legacy, GORDON, J., saying: Any fifteen shares of the preferred stock of the Cumberland Valley Railroad Company would meet and fulfill the donation."

The rule as to legacies of stock is thus laid down in Hawkins on Wills, *301, and these bequests are strictly within it, for the testatrix had twenty-six shares of the stock of the bank worth, at par, $2,600: "A legacy of stock, of whatever denomination, is not prima facie specific, but is a general legacy; although the testator may have had stock of the description

mentioned sufficient to answer the bequest. (Simmons v. Vallance, 4 Bro. C. C. 345 ; Purse v. Snaplin, 1 Atk. 414 ; Sibley v. Perry, 7 Ves. 522.) Thus, if the testator, having 1,000 1.3 per cents, or long annuities, bequeaths that sum to A., the gift is not adeemed by the sale of the stock in his lifetime, but operates as a direction to the executor to purchase the stock for A. out of the general assets. The rule is the same whether the gift be of ' 1,000£ 3 per cents,' or of ' 1,000£ in the 3 per cents: ' (Webster v. Hale, 8 Ves. 410.)" In Robinson v. Addison, 2 Beav. 515, a testator owning fifteen and a half shares of stock in the Leeds and Liverpool Canal Company, bequeathed five and a half shares of stock in that company to A., five shares to B., and five shares to C. There was no description or reference in the will to show that he intended to give the particular shares which he held at the date of his will. At his death he possessed no shares in the said canal company, and it was held that the legacies were general and not specific. The stock of that company was seldom sold in the market, and it was urged for that reason, apart from the disposal of the precise number of shares held by the testator, that he must have intended to give these specific shares, and not that his executor should purchase them for the legatees out of the general assets of his estate. The court held the legacies to be general, saying : " It is, however, clear that the testator, if he had meant to give only the shares which he had, might have designated them as ' his,'—that the mere circumstance of the testator having, at the date of his will, a particular property, of equal amount to the bequests of the like property which he has given without designating it as the same, is not a ground upon which the court can conclude that the legacies are specific. . . . There is no description or reference to shew that he meant to give the particular shares which he had at the date of his will, nor any trust from which it can, as it appears to me, be concluded that he must have meant only such shares as he had at the respective times of making his will and of his death. . . . The shares, though not frequently sold, are nevertheless occasionally bought and sold, and may be had for money." Authorities need not be multiplied to sustain the correctness or the view of the court as to the character of these legacies.

The testatrix did not intend to give money, for if she had so intended she would have simply made pecuniary bequests to the legatees. What she intended to give them was a certain amount of bank stock, measured by its par value, and what they are entitled to get from her estate is the market value of the same: Johnson's Estate, 170 Pa. 177. The awards to them were upon this basis.

The assignments are all overruled, and the decree is affirmed at appellant's costs.