## Woodward's Estate.

*Wills—Specific devise—Sale of land in testator's lifetime—Sale by guardian of testator under order of court—Ademption of devise.*

Where land of a weak-minded person was sold by his guardian under an order of court, and it appears that by a will made prior to the guardianship such person had by his will specifically devised the land sold, the sale worked an ademption of the specific devise of the land, and the proceeds thereof are distributable as part of the residuary estate and not to the devisee.

Audit of account of executor's account. O. C. Fayette Co., Sept. T., 1922, No. 28.

*Robert E. Umbel*, for accountants.

*Davis W. Henderson*, for Ewing Finley Woodward.

*D. M. Hertzog*, for Elizabeth Jane Gilchrist et al., residuary legatees.

WORK, P. J., Oct. 23, 1922.—Samuel W. Woodward, a resident of Menallen Township, Fayette County, Pa., died Sept. 30, 1921. He left a will and codicil, dated April 10, 1916, and March 26, 1917, respectively, and now of record in Will Book, vol. 22, page 270, by which he appointed John Frasher and Dempsey D. Woodward executors. The executors assumed the trust and filed their first and final account at the above number and court. This account shows total assets of $102,612.90, and the accountants claim credit for the expenses of the trust, debts, State and Federal taxes, &c. (eliminating the $5000 distribution made to Elizabeth Jane Gilchrist), to the amount of $9092.40, leaving a balance, subject to the $5000 distribution, of $93,520.50. The testimony shows that the debts are all paid.

The first and second paragraphs of the will have been carried out. The third paragraph confirms the advancements made to certain of the children. The fourth paragraph, the fifth paragraph and the sixth paragraph of the will became inoperative by reason of the death of James Curry Woodward during the lifetime of the testator, without issue. The seventh paragraph of the will has been carried out by agreement among the heirs to accept certain of the property therein designated at the appraised value.

The contention in this estate arises under paragraphs eight and nine, which paragraphs read as follows:

"Eighth. I give, devise and bequeath to my said son, Ewing Finley Woodward, the sum of Thirty Thousand Dollars, to be paid to him within one year after my decease; also my home farm on which I now reside absolutely in fee simple at the death of my son James Curry Woodward, it being the same farm which I purchased from Lewis and John Stewart, containing about 95 acres, more or less, situate in Menallen Township, Fayette County, Pennsylvania.

"Ninth. All the residue of my estate, whether real, personal or mixed, I devise and bequeath to my three daughters—Elizabeth Jane Gilchrist, Ida Belle Phillips and Anna Laura Frasher, and my son Ewing Finley Woodward, share and share alike."

At the date of the will the testator owned and resided on the farm described in paragraph eighth.

At No. 489, March Term, 1920, a petition was presented to the Court of Common Pleas, praying for a hearing to determine whether or not the said Samuel W. Woodward was mentally capable of attending to his own business. A hearing on this petition was had on Feb. 25, 1920, when the court determinded that the said Samuel W. Woodward was a weak-minded person, &c., and appointed Robert E. Umbel guardian, and directed that the guardian give

bond in the sum of $208,000, which bond was duly presented to court and approved. On Nov. 16, 1920, the guardian petitioned the court for an order to sell said farm described in paragraph eighth at private sale, to Alva Beal and William B. Beal, for the sum of $7000. The court on the same day approved, ratified and confirmed the sale so made, and authorized and directed the guardian to execute and deliver a good and sufficient deed for the same on receipt of the purchase money, and further directed that the guardian give bond in the sum of $14,000, with surety or sureties to be approved by the court, conditioned for the faithful application of the proceeds of said sale. On the death of said Samuel W. Woodward on Sept. 30, 1921, the guardian, on Dec. 5, 1921, filed his first and final account of his administration of said estate, which account was on the same day confirmed *nisi* by the court and absolute under the rules. The balance in the guardian's hands was in due time turned over to the executors, including the $7000 realized for the farm, and the same is accounted for in the account now before us.

At the audit of the estate Ewing Finley Woodward, the devisee of said farm under the eighth paragraph of the will, claimed the $7000 in lieu of the farm. The contention of the residuary legatees is that the specific devise (the farm) itself was not in existence at the death of the testator, when the will became operative, and was, therefore, adeemed, and that the proceeds of said farm passed into the residuary estate to those entitled under the residuary clause of testator's will.

Subsequently to the date of his will he was found to be a weak-minded person, and, in the exercise of the jurisdiction conferred by statute on the Common Pleas Court, the farm was sold for $7000 and the money paid to the guardian. Under these circumstances, the question arises whether the devise has been adeemed.

The devise of the farm, its accurate description, location and from whom obtained, contains every element essential to a specific devise: Pleasants's Appeal, 77 Pa. 356. A specific legacy is defined as a bequest of a specified part of the testator's estate, distinguished from all others of the same kind. A specific legacy is adeemed by any change in the state or form of the subject which makes it different from that described by the testator. Ademption takes place when the thing given is consumed, sold or taken from the testator during his lifetime: Smith's Appeal, 103 Pa. 559. In a specific devise of land, the testator must be seized of it at the date of his will and remain seized of it to the date of his death, when his will becomes operative. If he voluntarily alienates his land by deed, it is clear the devisee would have no claim to the proceeds of the sale, as that would be personalty and would pass into the residuary estate. Does a different rule prevail in the case of an involuntary alienation by operation of law?

Mr. Jarman, in his work on Wills, page 163, asserts: "This rule applies equally to cases of conversion by operation of law; as, by Act of Parliament, or by an order for sale pronounced by a court of competent jurisdiction, or by a compulsory sale under the land clauses, and similar acts."

It is held in Blackstone v. Blackstone, 3 Watts, 335, as follows: "That the annihilation of a specific legacy, or such a change in its state as makes it another thing, annuls the bequest for reasons paramount to considerations of intention, is now too firmly settled to be questioned."

In Harshaw v. Harshaw, 184 Pa. 401, 406, it is said: "The devise of the two particularly described ground rents was undoubtedly a specific devise as to each. One of the two subjects of that specific devise having been disposed of in the lifetime of the testatrix—absolutely extinguished by payment to her

3 D. & C.

of the principal of the ground rent ($1066.66)—there was nothing upon which the specific devise could operate at the time of her decease except the remaining subject of the devise. It is hornbook law, for which neither argument nor citation of authority is needed, that where a particularly described lot or piece of land is specifically devised, and afterwards the subject of said devise is sold by the testator or taken from him by operation of law in his lifetime, the devisee takes nothing."

In Gibson's Estate, 57 Pa. Superior Ct. 283, 285, it is held: "There can be no doubt that the intention of the testatrix was to give this real estate to her sisters and brother as real estate. . . . At the time the will took effect there was no real estate meeting the terms of the will as intended to be understood when it was made. The doctrine is clearly established by Harshaw v. Harshaw, 184 Pa. 401, and other cases preceding it, that where a particularly described piece of ground is specifically devised and afterwards is sold by the testator or taken from him by operation of law in his lifetime, the devisee takes nothing. This results, as a rule of law, for reasons paramount to considerations of intention."

In Pleasants's Appeal, 77 Pa. 356, it is held: "Bowen, domiciled in Philadelphia, devised all his real and personal property in Jamaica, part being slaves, which there were real estate; after the date of the will and during his life, Parliament passed an act by which slaves were set free, and appropriated money to compensate their holders. After testator's death, his proportion was ascertained by commissioners under the act and paid to his executors. Held, that the act was a conversion into personalty before his death and a revocation of the devise, and that the compensation received was not substituted for it.

"After the execution of his will and before his death, the legal status of his slaves had undergone a radical change. The British Parliament had exercised its transcendent powers. The 1st of August, 1834, had come and gone. Slavery in Jamaica was on that day and thenceforth 'utterly and forever abolished.' No longer could persons be there sold or purchased, devised or inherited as slaves. Their real estate quality was then divested and fell with their bonds of slavery. Hence, at the time of John Bowen's death, and for seven months next preceding it, he owned no slaves. Whether they had been taken from him with or without his consent, they had, nevertheless, in fact and by law been taken, and he did not die owning them. They had ceased to have the specific existence which they had when the will was executed. This entire destruction of their existence as slaves withdrew them from the operation of the will devising them as real estate. . . .

"As, then, the devisee of the real estate could not take the shares themselves, they cannot take the compensation received for them in lieu thereof. The devise was specific. It was of real estate in Jamaica. The conversion took place in the lifetime of the testator. The money received as a substitute cannot be held by said devisees."

Counsel for the devisee submits and relies on the case of Wilmerton v. Wilmerton, 28 L. R. A., N. S., 401, where it is said: "The question, in our judgment, is not whether, as a mere matter of accident or of purpose outside of the testator's purpose, the thing set apart as the *corpus* of a special bequest has been changed in specie. The real question is whether, all things considered, the testator's testamentary disposition did or did not remain, with reference to the particular thing embodied in the specific bequest or its proceeds, the same as it was the last moment he was able to exercise a testamentary disposition. In that way, and in that way only, we think, can the right of the man

Woodward's Estate.

to dispose of his property according to his own wishes, exempt from the interference, caprice or interest of others, be fully carried out. In that way only can his intention, as embodied in his will, be truly administered."

This case, taken in its entirety, is in direct conflict with the Pennsylvania authorities above cited. It is also in conflict with the New York authorities. In the case of Matter of Brann, 219 N. Y. 263, 268, it is said: "It was once thought that ademption was dependent on intention, and it was, therefore, held in the old days that when a change was effected by public authority or without the will of the testator, ademption did not follow. But for many years that has ceased to be the law. It has ceased to be the law in England. It has ceased to be the law in New York. What courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for the change."

From the entire record and the authorities above quoted we find as follows:

1. That the devise of the farm under paragraph eight of the testator's will was a specific devise of the farm.

2. That said farm was sold by an order for sale pronounced by a court of competent jurisdiction during the lifetime of the testator.

3. That the sale so made worked an ademption of the specific devise of the farm for reasons paramount to considerations of intention indicated in the will.

4. That at the death of Samuel W. Woodward, when his will became operative, there was no farm meeting the terms of the will as intended to be understood when it was executed, and the court is without warrant of authority to substitute the money received for the farm for the farm devised.

5. That under section 15 (c) of the Wills Act of June 7, 1917, P. L. 403, 408, this $7000 passed and is included in the residuary estate of the testator, to be distributed as therein directed.

The claim of Ewing Finley Woodward for $7000, the consideration received for the farm devised to him by the eighth paragraph of his father's will, is refused and dismissed.          From Luke H. Frasher, Uniontown, Pa.