## Neville's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne, and Sinkler, JJ.

STEARNE, J., Auditing Judge.—One question arises in connection with the present audit which requires adjudication. The testatrix, by four separate items of her will, set up four trusts for the benefit of her four grandchildren respectively. In each of these trusts she gave to her trustee, the accountant, "out of investments made by me Bonds to the value of Five thousand Dollars"; the trusts to continue until the respective grandchildren attain the age of 25 years. It is contended on behalf of these grandchildren, all of whom are minors, that distribution of the trust legacies should be made in bonds at market value as of date of distribution. Two of the residuary legatees, however, contend that the legacies should be awarded in kind, but at par value. It is agreed by stipulation, which is annexed hereto, that, at the time of execution of the will, the decedent owned bonds to the aggregate par value of $89,880; that, as of the same date, these bonds had a market value of only $77,360; that, as of the date of death of the decedent, the bonds had a market value of $53,572.76; and that, as of a recent date (March 18, 1933), the same bonds had a market value of only $44,338.40. It is therefore clear that if the decedent meant "Bonds to the [par] value" of $5,000, it would only require approximately one half the

number of bonds to satisfy the legacies as it would if she meant "Bonds to the [market] value" of $5,000.

Upon careful consideration of the cases I have formed the opinion that par value is the measure where it is found that the legacy of bonds is specific. Market value prevails where such legacy is general. Johnson's Estate, 170 Pa. 177, appears to be authority for the former principle, while Snyder's Estate, 217 Pa. 71, rules the latter.

At the audit, and before considering the excellent briefs submitted by counsel, I was disposed to regard the market value at the time of distribution as the true test as applied to both specific and general legacies. A review of the authorities and subsequent reflection has changed my view and I am now clear that the correct rule is as above stated.

In Johnson's Estate, supra, the bequest was conceded to be specific. The res was "my Harrisburg Gas Stock". The wording of the bequest was: "I give and bequeath the said Gas Stock to the extent of six thousand dollars." The Supreme Court held that it was a fair indication of intention that par value should be the standard of measure. Mr. Justice Green very clearly draws the dividing line between the two measures of value when he says (p. 179) : "The subject of the gift is gas stock, and is not money. If a gift of money had been intended the testatrix would have simply said that she gave $6,000 to be divided among the children. But she did not give money at all. She gave gas stock specifically as such. *The words 'six thousand dollars,' were not used to define the gift itself, but as a means of measuring the extent of the stock."* The italics are my own.

The court discusses the possibility of market fluctuations in the stock between the dates of death, i. e., the ending of the first trust, and final distribution, and uses this rather significant language upon the supposition that the specific bequest had been of *bonds* (as in our case) instead of stock (p. 179) : "If the gift had been of gas bonds to the extent of $6,000 every one would have understood that the gift was of bonds expressing an obligation to pay $6,000 in money. In other words the face or par value of the bonds would have been necessarily understood as meaning the extent of the gift. It is difficult to conceive how any other limitation of the gift could be understood."

Snyder's Estate, supra, fixes the market value as the standard where the legacy is general. In that case the bequest was: "I give and bequeath . . . two thousand dollars of the Bank stock of Bank referred to above." For reasons to which I will allude hereafter the Supreme Court held this legacy to be general. Mr. Justice Brown, speaking for the court, said (p. 77) : "what they are entitled to get from her estate is the market value of the same."

Johnson's Estate and Snyder's Estate are the only cases in Pennsylvania which I have been able to discover, with the exception of Hoff's Appeal, 24 Pa. 200, cited with approval in Johnson's Estate. In Hoff's Appeal, the bequest was to the surviving wife for life or widowhood of "the interest on $15,000 of such stock I may possess". The auditor allowed the interest on $15,000 of the stock estimated at its par value, and his ruling was upheld by the orphans' court and by the Supreme Court. All that the Supreme Court said upon the subject was (p. 207) : "but in allowing her, as the auditor did, the full interest on $15,000 of the testator's Pennsylvania six per cents at par value, we believe he came as near to the mind of the testator as was possible."

While there may be room for argument as to whether the foregoing cases unequivocally establish the rule which I have stated, nevertheless the reasoning and effect of the decisions irresistibly lead me to this conclusion. The result seems just and reasonable, and is probably the true intent of the testatrix, as nearly as it can be ascertained.

The philosophy of such a rule or distinction appears sound. In the case of a specific bequest, it is the property itself, rather than the intrinsic value, which is in the mind of the testator. The testator desires his legatee to have that designated property and no other. When the gift takes the form of stocks or bonds, and the pecuniary value thereof becomes a factor, and the testator himself fails to fix the measure of value, the court is charged with the duty of seeking the intent of the testator. Now, of course, market value of securities usually fluctuates, depending upon countless collateral influences. Par value, on the other hand, is fixed in the security and is therefore constant. I agree that it is nearer the probable intent of the testator to give such specific earmarked property to the legatee at the face or par value thereof, rather than to assume he intended the beneficiary to take at a market value which may rise or decline depending upon the vicissitudes of the daily reports of the stock and bond markets.

With a general legacy, the testator's idea is quite the reverse from that of a specific legacy. In the case of a general legacy, the dominant intent is the gift of money. Such a legacy, it is true, may be charged against specific property, but is, after all, a money gift and is payable at all events, even though the specific property fails. Thus, in such a case, the legatee is entitled to money's worth or money itself, should the designated fund out of which the legacy is to be satisfied fail. Indeed, cases are reported where the legacy is only satisfied by the executor going into the market and purchasing securities at current prices. In some cases no other measure can be applied than market value, the money equivalent.

Because this testatrix made her investments the subject of her gifts, they are unquestionably demonstrative. The important and controlling question is whether they are specific or general in character. The pertinent inquiry in this connection is: Did the testatrix give, in each instance, $5,000 in money and direct that same be paid in bonds, or did she bequeath the bonds themselves to the extent of $5,000? If the former, the legacies are general and the market value prevails. If the latter, the legacies are specific, and the measure is par value. It is to be remembered that the law leans to general legacies rather than to specific legacies where there is doubt. See Snyder's Estate, supra.

An excellent statement is found in Page on Wills (2d ed.), 2040, sec. 1227, reading as follows:

"A specific legacy is a gift of a specific thing, or of some particular portion of the testator's estate, which is so described by the testator's will as to distinguish it from other articles of the same general nature. A specific legacy differs from a general legacy in that it is not intended by testator to be paid out of his estate generally, but is to be paid solely by delivering to the beneficiary the specific thing given by will, as distinguished from a designated value, quantity, and the like."

At section 1229 (p. 2045) it is said:

"Under a testament which gives stocks, bonds, or other securities up to a given value, or of a given amount, it is frequently difficult to determine whether the gift is general, specific, or demonstrative. The entire will must be used to determine testator's intention; and occasionally, different courts have reached different results in construing words which seem practically identical. The general rule is that if it appears from the entire will that the testator intends to pass particular stocks, bonds, or other securities which he has described with sufficient certainty, the gift is specific; if the provision amounts, in effect, to a direction to the executor to buy such a number of such stocks, bonds or other

securities out of his estate generally, the gift is general; while if the provision,. in effect, directs the executors to procure securities in question out of the estate generally, but charges the gift upon some particular fund or property, such as testator's securities which correspond to the description in the will, the gift is demonstrative."

In Crawford's Estate, 293 Pa. 570, 574, Mr. Justice Walling quotes with approval the following excerpt from Walls v. Stewart, 16 Pa. 275, 281:

"The distinction seems to be this—If a legacy be given with reference to a particular fund, only as pointing out a convenient mode of payment, it is considered demonstrative, and the legatee will not be disappointed though the fund totally fail. But where the gift is of the fund itself, in whole or in part, or so charged upon the object made subject to it as to show an intent to burden that object alone with the payment, it is esteemed specific."

In Snyder's Estate, supra, at page 73, the following definition appears:

"A specific legacy or devise is a gift by will of a specific article or part of the testator's estate, which is identified and distinguished from all other things of the same kind, and which may be satisfied only by the delivery of the particular thing."

Looking now at the language of the will before us, with the foregoing principles as a guide, it appears that the gifts were of bonds themselves rather than pecuniary bequests. The testatrix set up four separate trusts for the benefit of four grandchildren respectively. In each instance part of the property so bequeathed was designated as follows:

"AND ALSO out of the investments made by me Bonds to the value of Five thousand Dollars", etc.

In the Frank Leidy Reed trust she directed the "net income arising from said bonds" to be paid to the grandchild's mother (daughter of the testatrix) until the grandchild reached the age of 25 years, but if the daughter should predecease the grandchild then the trustee to "apply the net income from said . . . Bonds" for the grandchild's support until the age of 25 years is attained; then follows a gift to the grandchild of "the said bonds." Contemplating the grandchild's death during the continuance of the trust, she directed that, in such event, the real estate trust res be sold and the proceeds "together with the sum of $5,000 in bonds" be divided among her other children and grandchildren.

In the Barbara N. Friedrich trust the language used is similar, except that, in the event of the death of the granddaughter during the continuance of the trust, the words used are: "I give and bequeath the said $5,000".

As respects the Warren B. Neville trust, there is no real estate, but similar language is used. When he attains the age of 25 years, the testatrix says: "I give and bequeath the said bonds" to him. Contemplating the grandson's death during the trust the words are: "I give and bequeath the said bonds" to the father of Warren (a son of the decedent).

The trust for the benefit of Edward Carl Friedrich is similar to that for Warren B. Neville. When Edward reaches the age of 25 years, he is bequeathed "said bonds." There are alternate provisions in case of the death of Edward during the continuance of the trust in which event testatrix bequeaths "said bonds" to designated beneficiaries.

To indicate the testatrix's testamentary intent respecting her bonds, she uses the following significant language in the last item of her will: "As my Bonds, with a view to having good investment have been carefully selected it is my wish and desire that none of them be sold."

It is therefore evident that the bonds themselves, and not pecuniary bequests payable in bonds, are the subjects of the gifts. The testatrix indicated that she

had confidence in her bond investments, did not desire them sold, and bequeathed the bonds themselves as part of the respective trust res.

In a line of cases set out in the opinion of Mr. Justice Brown in Snyder's Estate, 217 Pa. 71, supra, it was shown that gifts were specific where the testator used the word "my" in connection with the same. Under the rule laid down in those cases, if our present testatrix had said "my bonds to the value of" $5,000 there could be no question but that the gifts were specific. I can draw no legal distinction between the words last quoted and the words actually used, to wit, "AND ALSO out of the investments made by me Bonds to the value of".

I have therefore reached the conclusion, and so rule, that the gifts in question are demonstrative but specific in character, and the bonds should be taken into the respective trust estates at their par value. This necessarily carried with it the right of selection on the part of the legatees, as to which see Mizener's Estate (No. 1), 72 Pa. Superior Ct. 400, 262 Pa. 62.

The result of the foregoing ruling is not to be regretted on the ground that it may be a possible injustice to the grandchildren, when we consider that if the result had been otherwise testatrix's children, the primary objects of her bounty and the residuary legatees under her will, would suffer thereby. If there is an ambiguity (which I do not concede), it must be resolved in favor of the residuary legatees: Whiteside's Estate, 302 Pa. 452; French's Estate, 301 Pa. 223; Tarter's Estate, 291 Pa. 458; Smith's Petition, 291 Pa. 129; Brush's Estate, 277 Pa. 9, etc. . . .

*H. C. Remick*, for exceptant.

*Carroll Wetzell* and *Dechert, Bok & Smith*, contra.

SINKLER, J., September 1, 1933.—The auditing judge has correctly held that the legacies in question are demonstrative but specific in character, and that testatrix bequeathed the bonds at their par value as part of the respective trust res.

The leading case on the subject in this State is Blackstone v. Blackstone, 3 Watts 335, decided in 1834, in an opinion by Gibson, C. J. The presumption of intention, he says, is favorable to general legacies in the first instance and clear proof is required of a restrictive intention to repel it. The bequest was of "all my two hundred and fifty shares of capital stock which I hold in the Union Bank of Pennsylvania". The words "which I hold", the chief justice continues, individuate the stock as a corpus with as much precision as would the words "standing in my name" or "all the stock which *I have* in the three per cents" used in cases cited by him as creating specific legacies.

The opinion of Justice Gordon in Sponsler's Appeal, 107 Pa. 95, recognizes this principle of law. In an opinion of Anderson, J., of this court, in Ferreck's Estate, affirmed in a per curiam opinion of the Supreme Court reported in 241 Pa. 340, the subject is discussed at considerable length and many authorities are cited.

The bequest of 50 shares of XY stock is a general legacy, even though the testator may have owned exactly that number of shares at the time his will was executed and at the date of his death. A bequest of 'my 50 shares of XY stock', or '50 shares of the stock registered in my name' or 'belonging to me' is a specific legacy.

The presumption that a legacy is general rather than specific must yield to the intent of the testator if it be manifest from his whole will that his purpose was to make a specific bequest of the security in question.

This principle of law sustains the decision of the auditing judge in the present case. He construes "out of investments made by me bonds to the value of", etc., as not to be distinguished from "my bonds to the value of". If the words used by testatrix are construed as meaning "out of my investments bonds to the value of", etc., the conclusion is likewise reached, to wit, that the testatrix intended a specific legacy of her bonds.

We agree with the auditing judge that evidence of testatrix's intent is confirmed by the final clause of her will, wherein she recites that her bonds have been selected with a view of having good investments and expresses the wish that none of them be sold.

The auditing judge has also correctly decided upon the authority of Johnson's Estate, 170 Pa. 177, and Snyder's Estate, 217 Pa. 71, that the testatrix designated the par value of the bonds bequeathed and not the market value thereof.

The exceptions are dismissed and the adjudication is confirmed absolutely.