## Yingling Estate (No. 2)

*O. J. Tallman* and *R. F. Stevens,* for accountants.
*Harold W. Helfrich,* for Alfred H. Newhard.
*Donald L. LaBarre,* for exceptants.
*Phillip H. Williams,* guardian, for Alfred H. Newhard, Jr.

GEARHART, P. J., December 5, 1957.—There is before us for audit the first and final account of Alfred Newhard and the Lehigh Valley Trust Company, executors under the last will and testament of John J. Yingling, deceased.

John J. Yingling died January 24, 1953, leaving a last will and testament dated March 29, 1951, which was duly probated by the Register of Wills of Lehigh County on February 5, 1953. Exceptions have been filed to the proposed schedule of distribution by Henry W. Yingling and his wife, Edna C. Yingling, son and daughter-in-law of the testator. By agreement, the only exception to be considered by the court is Exception No. 1. This exception deals with the failure of the

accountants to show a proposed distribution to Henry W. Yingling and Edna C. Yingling of $15,000, the amount required to satisfy a mortgage against premises 1644 Walnut Street, Allentown, in accordance with item IV of testator's will. Item IV of the will is as follows:

"ITEM IV. I give and devise unto my son, Henry W. Yingling, and my daughter-in-law, Edna C. Yingling, husband and wife as tenants by the entireties, all that certain lot or piece of land with the buildings thereon erected situate on the South side of Walnut Street, between West Street and Seventeenth Street, known as No. 1644 Walnut Street, Allentown, Pennsylvania, being the home in which I have resided. Any encumbrances which may be a lien on said property at the time of my decease shall be paid in full by my hereinafter named Executors. The real estate hereby devised shall not be subject to any charge, however, by operation of law or otherwise for or on account of the monetary bequests herein contained under any circumstances whatsoever."

On December 12, 1952, the testator conveyed premises 1644 Walnut Street, Allentown, Pa., to himself and his daughter-in-law, Edna C. Yingling, as joint tenants with right of survivorship.

When the case was first called for audit, counsel for exceptants endeavored to introduce extrinsic evidence showing what happened on December 12, 1952, the date of the conveyance. It was agreed and stipulated that before proceeding with the hearing, the question of admissibility of extrinsic evidence should be decided. Subsequently, on May 16, 1957, an opinion was filed wherein the court ruled that extrinsic evidence was receivable to show the circumstances surrounding the conveyance of the real estate; this for the purpose of determining testator's intent in making said conveyance: Yingling Estate, 12 D. & C. 2d 543.

A further hearing was held, argument had, and the matter is now ripe for adjudication.

The legal question involved is whether the conveyance of the real estate under date of December 12, 1952, represented an ademption or satisfaction of the legacy given in item IV, and further, if it is a satisfaction, whether it amounts to a pro tanto satisfaction or a satisfaction in full.

When the testator wrote his will there was a $15,000 mortgage on the premises, which remained unpaid at his death. Accountants contend that the gift of the house and the direction to pay off the encumbrance represent one gift, that the same is a specific gift and that the conveyance of the real estate by testator brought about a complete ademption: Blackstone v. Blackstone, 3 Watts 335; Hoke v. Herman, 21 Pa. 301, 303; McFerren Estate, 365 Pa. 490, 493.

Exceptants on the other hand contend that the conveyance of the real estate represented a satisfaction pro tanto of the legacy and maintain that as to the gift of the mortgage debt, no ademption took place for the reason that the direction to pay the encumbrances prior to all other monetary legacies represented a general legacy which was not adeemed or satisfied by the transfer of the real estate: McFerren Estate, supra, 492, 493; 4 Page on Wills, Lifetime ed., secs. 1393 and 1549.

More than that, exceptants contend that the clear scheme of the will and the circumstances attending the execution of the deed overwhelmingly show that testator intended that they receive the gift of the real estate free and clear of all encumbrances. Exceptants argue that testator by his act in his lifetime made the real estate available to them, and that represents an ademption by satisfaction pro tanto: 4 Page on Wills, Lifetime ed., sec. 1549.

In deciding the question before us, it is well to bear in mind certain well known principles of law pertaining to the interpretation of wills. It has been held in many cases that the intention of the testator is the pole star in the interpretation of every will and that the intention must be ascertained from a consideration of the entire will, including its scheme of distribution as well as its language, together with all the surrounding and attendant circumstances: Lyle Estate, 374 Pa. 344; Brumbach Estate, 373 Pa. 302; Newlin Estate, 367 Pa. 527; Anderson Estate, 373. Pa. 294; McFadden Estate, 381 Pa. 464.

A specific legacy has been defined as a gift by will of a specific article or part of testator's estate, which is identified and distinguished from all other things of the same kind, and which may be satisfied only by the delivery of the particular thing. A general legacy is one without such words of identification and is not liable to ademption: Snyder's Estate, 217 Pa. 71; Wood's Estate, 267 Pa. 462; McFerren Estate, supra, 493.

It was announced in Blackstone v. Blackstone, supra, and Hoke v. Herman, supra, followed in a number of cases since, that ademption of a specific legacy is not a matter of intention and takes place when the particular gifts are not in existence in specie at the death of testator: McFerren Estate, supra, 493. Notwithstanding the statement made in the Blackstone and Hoke cases, and followed in other cases, that ademption is not a matter of intention, an examination of the cases reveals that the courts will endeavor wherever possible to construe the nature and subject matter of the legacies so as to effect the intention of testator where the latter's intention is clearly manifested. See the editors' observation on this matter in Fiduciary

Review, July 1946, page 2. The following is found in 57 Am. Jur. §1596:

". . . The general rule is that the question whether the legacy is adeemed or satisfied by the inter vivos transfers made to the legatee by the testator is dependent upon the testatorial intention; if the testator intended that such transfers should reduce or abrogate the legacy, it will be considered as adeemed, either in whole or in part. . . ."

Black's Estate, 223 Pa. 382 and Tweitmann's Estate, 293 Pa. 202, are illustrations of how the courts arrived at the intention of the testator by considering the subject of the gift. In Black's Estate, supra, testator bequeathed "the proceeds of bonds I hold in the National Life Insurance Company of Vermont." Before testator's death the bonds were paid and invested in a mortgage. It was held the bequest was not adeemed because testator bequeathed "not the bonds, but the proceeds." In Tweitmann's Estate, supra, testatrix gave her niece "all of my mortgage money." The mortgages were paid during her lifetime, the proceeds remaining in her savings account at death. The court held that the subject of the bequest was found to be the proceeds of the mortgages rather than the mortgages themselves.

Again, in the comparatively recent case of Frost Estate, 354 Pa. 223, testatrix directed her executor "to sell my General Motors stock as soon as may be done to advantage . . . and the proceeds be equally divided between him and my sisters Annie Frost Scheide and Virginia Frost Lintern." Testatrix sold the stock during her lifetime and she deposited the proceeds in her checking account, and a few days later transferred all but $500 of the proceeds to her savings account where it remained until her death. It was held, notwithstanding that the words of her will contem-

plated that her executor should sell the General Motors stock and pay the proceeds to the legatees, that the will did not make a specific gift of the stock and that the legatees were entitled to the proceeds since they were traceable.

In the instant case, considering the will alone, testator's intention is clear. He wanted his son and daughter-in-law to have his home at 1644 Walnut Street, Allentown, Pa. He directed his executors to pay any encumbrances which "may be a lien on said property at the time of my decease." Testator then added the sentence which makes it abundantly clear that he wanted the encumbrances paid off before the pecuniary legatees received their legacies. The words are: "The real estate hereby devised shall not be subject to any charge, however, by operation of law or otherwise for or on account of the monetary bequests herein contained under any circumstances whatsoever."

As stated, the act which gives rise to the dispute was the transfer of the real estate on December 12, 1952, to testator and his daughter-in-law as joint tenants. The question naturally arises: What was the intention of testator when he made this conveyance on December 12, 1952?

The testimony establishes that testator lived with his son and daughter-in-law in testator's house at 1644 Walnut Street, Allentown, Pa., from January 1946, up until his death on January 24, 1953, and that his son and daughter-in-law provided for his welfare and needs. Sometime prior to December 12, 1952, testator displayed signs of senility. Among other things which gave the son concern was that his father was dissipating his money and on one occasion purchased a fur coat for a young lady, who remained nameless at the hearing. The son, believing his father was no longer able to handle his own affairs, consulted his father's lawyer. The son suggested that a guardian be

appointed, but after discussion with counsel, it was decided that to do so would bring about an unpleasant situation and create unnecessary discussion by the public. The son was disinclined to have this occur. It was then decided that instead of having a guardian appointed, title to the property should be placed in the names of testator and Edna C. Yingling so that it would be secure from any improvident acts of testator. Accordingly, the deed was prepared by counsel and was executed in his office. Present with Senator Tallman at the time were testator and his son, Henry W. Yingling. Following the preparation of the deed, a general conversation ensued. One of the matters discussed was the mortgage of $15,000, now the subject of dispute. Counsel asked testator whether there was a mortgage on the property and apparently to verify it, he sent one of the junior members of the firm to check the records. It was agreed that a mortgage was in extant:

"A. Senator Tallman asked my father if he could pay the mortgage off today. Well, I mean, my father said he wasn't in a position to do so. . . .

Q. Did anyone say to you that this was part of your inheritance at the time of the conveyance?

"A. At the time of the conveyance, I would say no. Some time before that, Senator and I had a meeting or two before that, I think perhaps one, perhaps two, I don't recall. Why, I don't know exactly how to word it, but according to his ethics as an attorney, he could tell me that in my father's will that that was part of what I was to inherit, the house."

From the testimony we have no difficulty in discerning the purpose of making the conveyance. It is quite clear that this was a friendly family arrangement discussed originally by the only child of testator and testator's lawyer. The son, like many another in similar circumstances, saw his father frittering away his

substance and became concerned. He took the understandable procedure under the circumstances and went to his father's lawyer. Discussing the matter as indicated, it was agreed that to have a guardian appointed for the aged gentleman would cause family embarassment. It was then that this device of the joint tenancy was agreed upon. It was the kind of arrangement that a prudent lawyer would advise. The lawyer knew the contents of the will and he knew that under the terms of the will, testator's son and daughter-in-law were to get the property free and clear of encumbrances. In order to place the property in such a position that the father, who was showing signs of senility, could not dispose of it, it was placed in the joint names. Thus, the property was placed beyond the absolute control of testator, yet retaining to him ownership in the property. This procedure also had the effect of channeling title to the property to those who under the terms of the will would take.

At this point it should be stated that we are not unmindful of the fact that title was taken only in the names of testator and his daughter-in-law, rather than in the names of testator, his son and daughter-in-law. We do not regard this of great moment for the reason that the entire arrangement was an amicable one with the son present at the transaction: Sum. Pa. Jur. Intestacy and Wills §388.

From all of the surrounding circumstances it is evident that it was not the intention of testator to completely satisfy the gift contained in the will. It is manifest that the entire transaction was in consonance with the provisions of the will and in furtherance of its effectuation.

The only reason the mortgage was not paid off on December 12, 1952 was because testator did not have ready cash. Certainly, at that time the matter of the will was considered, for counsel had told the son that

the house was part of his inheritance under the will. At this point we make the observation that testator's son was a most credible witness and it was with some embarrassment and reluctance that he revealed from the witness stand what counsel had told him concerning the contents of his father's will.

It is a well known aphorism that no case has a brother, and that seems to be true here. No case exactly on point has been found by counsel, and the court's research has revealed none. However, accountants press upon us, in support of their position, Wybrecht's Estate, 6 D. & C. 167, as a case nearest in point of resemblance to the instant one. In the Wybrecht Estate the facts are stated as follows:

" 'The will is dated Dec. 11, 1919, and the testator had previously, on Jan. 6, 1915, conveyed premises No. 2510 North Lee Street, mentioned in the second paragraph of the will, to Adolph Schick and his wife, taking in part-payment their bond and mortgage of $1500, since reduced to $1300, which the testator held at the time of his death. The question was submitted to the Auditing Judge whether this second paragraph of the will operated in satisfaction of the bond and mortgage.' "

It was held in that case that the gift of the real estate failed of effect because testator did not own the real estate at his death, and likewise the direction to pay off the encumbrances on the property was predicated on the devise itself taking effect.

Comparing the facts in the instant case with Wybrecht's Estate, supra, several important differences appear. Thus, Judge Gest reasoned that when testator made his will in 1919, he must have known that he held the bond and mortgage and "if he wanted to have it satisfied, he would naturally have said so. *The direction to pay off is only applicable to encumbrances held by*

*another person.* Instead of adopting this obvious course, he undertakes to devise the premises in specie free of encumbrances. Why he did this when he had already conveyed *the same is hard to imagine.*" (Italics supplied.)

In the instant case testator was not the holder of the mortgage, nor do we have to guess his intention. The will itself is clear, and the purpose of conveying the real estate in the lifetime of testator raises no doubts of what was intended. Testator had no intention of satisfying Item IV of his will. The device used retained unto testator a type of ownership in the property which would terminate only upon the death of Edna C. Yingling or himself, dependent upon who died first. This assured that the property could pass to no one other than himself or his daughter-in-law. In addition, testator directed his executors to pay the encumbrances out of his general estate, even to the extent of sacrificing other pecuniary legacies, "under any circumstances whatsoever." The will and the circumstances attending the conveyance indicate that it was the intention of testator to give his son and daughter-in-law the property free and clear of the mortgage debt of $15,000. They have the home by reason of the conveyance of December 12, 1952, and they should now receive in addition what the will provides, i.e., the payment of the $15,000 mortgage.

Reverting to the legal question, we decide this matter on the broad and basic principle of law that testator's intention should always be carried out where it is clearly manifested. It is clearly manifested in this case.

When we turn to a consideration of the nature of that portion of the legacy directing that the encumbrances be paid in preference to the monetary legacies, we find the same to be a general legacy and not subject to ademption. In McFerren Estate, supra, 492, Mr.

Justice Allen M. Stearne, in an able and instructive opinion stated:

"An *ademption* occurs where a legacy is *specific* and the thing bequeathed is disposed of by testator in his lifetime. There is no ademption, however, where the legacy is *general*. . . ."

A general legacy is payable out of the general assets of the estate. In order to satisfy that portion of the legacy relating to the payment of the encumbrance requires the expenditure of $15,000. The transfer of the real estate in no wise adeemed this portion of the gift. The money is available today just as it would be had the real estate transfer not taken place. Accountants argue that the mortgage should not be paid because this portion of the gift is conjoined with the gift of the real estate. The weakness of this argument is that testator himself clearly indicated that this portion of the gift should be paid or satisfied before monetary legatees received any share. In this aspect, the gift represents money necessary to pay off the mortgage. In essence it is in the nature of a pecuniary bequest, and in reality is more closely tied up with the monetary bequests than with the real estate devise. The monetary legacies are clearly subordinate to the gift of the money necessary to pay the encumbrance. This is the intent to be gathered from the will, yet the accountants now propose to pay the monetary legacies and worse than that, the residuary legacies, and ignore the clearly expressed intent of the testator. If this were done the court, in effect, would be rewriting the will, and this we may not do. It has been stated by our Supreme Court in many cases in various ways that the intent as disclosed by the will is controlling and once determined, it will be effectuated unless in contravention of some established rule of law or public policy: Haydon's Estate, 334 Pa. 403, 407; Mereto's Estate, 311 Pa. 374, 377; Baughman's Estate, 281 Pa. 23, 40;

Wood v. Schoen, 216 Pa. 425, 428; Holbrook's Estate, 213 Pa. 93, 94.

Now, December 5, 1957, exception no. 1 is sustained and accountants are directed to prepare a revised schedule of distribution in accordance with what we have stated in the body of this adjudication; that is to say, there will be awarded to Henry W. Yingling and Edna C. Yingling on account of the mortgage debt, the sum of $15,000, which payment will take priority over the other monetary bequests. The revised schedule of distribution will be submitted to the court within 10 days from the date of this order, and counsel for accountants will give notice to the filing of the revised schedule to counsel of record. Following this, the court will enter an appropriate order of confirmation of the account and distribution of the balance. Upon entry of such order, if no exceptions are filed within 10 days therefrom, the decree will become final.