# Hunter's Estate.

*Wills—Construction—Rule against perpetuities—Gift to charitable use—Trusts and trustees—Cy-pres doctrine—Acts of April 26, 1855, P. L. 328; May 9, 1889, P. L. 173, and May 23, 1895, P. L. 114.*

1. Under the Acts of April 26, 1855, P. L. 328; May 9, 1889, P. L. 173, and May 23, 1895, P. L. 114, there is a fixed purpose of the legislature to protect and conserve charitable bequests, unless the same are void for uncertainty, or the object of the trust be not ascertainable, or has ceased to exist.

2. If the clearly expressed purpose of the testator to create a charitable use can be accomplished, his desire will be followed though new trustees are required, or the funds, by reason of altered circumstances, must be devoted to other like purposes under the cy-pres doctrine, though the new use could not be said to express the exact thought of the donor.

3. The general rule against perpetuities has no application to vested estates.

4. Where a testator creates, after a life estate, a charitable use in three individual trustees, and provides that, after the death of the survivor, the fund shall vest in a university named for the use intended, on condition that the university shall supply a proper piece of land on which a proposed building could be erected, the gift does not violate the rule against perpetuities, because the condition might not be carried out within a life or lives in being, or twenty-one years thereafter.

5. Where, in such case, all three of the trustees are dead at the termination of the life estate, and the university has not supplied the land, the orphans' court is not precluded from ordering the fund to be used in the way most likely to effectuate the intent of the'testator; and this it may do by appointing the university substituted trustee to carry out the charitable use, whether such use would be carried out in the building at the university, or elsewhere.

Argued January 9, 1924. Appeal, No. 60, Jan. T., 1924, by Merion Trust Company, Charles W. Millken and Harbison Gates, Executors and Trustees under will of Elizabeth R. Moulton, deceased, from decree of O. C. Phila. Co., Oct. T., 1896, No. 160, dismissing exceptions to adjudication, in estate of Edmund A. W. Hunter, deceased. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Exceptions to adjudication of THOMPSON, J.
The opinion of the Supreme Court states the facts.
Exceptions dismissed. Merion Trust Co. et al., executors of Elizabeth Moulton, deceased, appealed.

*Errors assigned* were (1-5) dismissal of exceptions, quoting record.

*George Ross,* for appellants.—The bequest under the sixth item of the will as to the charitable uses therein set forth offends the rule against perpetuities: Lawrence's Est., 136 Pa. 354; Johnston's Est., 185 Pa. 179; Lilley's Est., 272 Pa. 143.

The conditions were of the substance of the gift: Smith v. Townsend, 32 Pa. 434; Donahue v. McNickle, 61 Pa. 73; Smith's App., 88 Pa. 492; Coggin's Est., 124 Pa. 10; Anderson's Est., 269 Pa. 535; Lilley's Est., 272 Pa. 143; Barton v. Thaw, 246 Pa. 348.

The gift in the present case of testator's residuary estate is all part of one scheme, so that if any part of it is void, the whole fails: Lilley's Est., 272 Pa. 143; Toner's Est., 260 Pa. 49; Penrose's Est., 257 Pa. 231.

The court below did not have the power to award the fund in question to the University of Pennsylvania in trust, to carry into effect the terms of the request: Shoemaker's App., 91 Pa. 134; De Silver's Est., 211 Pa. 459; Anderson's Est., 269 Pa. 535.

*William N. Trinkle,* of Bell, Kendrick, Trinkle & Deeter, for appellee.—There was no violation of this

rule against perpetuities: Lennig's Est., 31 W. N. C. 234; Kortright's Est., 237 Pa. 143; Toner's Est., 260 Pa. 49; Lawrence's Est., 136 Pa. 354; Phila. v. Girard's Heirs, 45 Pa. 29; Manners v. Library Co., 93 Pa. 165.

By the settled law of Pennsylvania, in such circumstances, the gift for such charitable use will not be permitted to fail, and it became the manifest duty of the court, under the said Acts of 1855 and 1895, to supply a trustee and carry the principal purpose of the testator into effect, as near to his particular subsidiary directions as possible, in accordance with the cy-pres doctrine: Toner's Est., 260 Pa. 49; Barnwell's Est., 269 Pa. 443; Scott's Est., 28 D. R. 292; Com. v. Pauline Home, 141 Pa. 537; Mormon Church Case, 136 U. S. 1; Daly's Est., 208 Pa. 58.

OPINION BY MR. JUSTICE SADLER, February 11, 1924:

Edmund A. W. Hunter died in 1895, leaving a last will, dated 1893, which was duly probated. In it he provided that his estate should be held in trust, one-half of the income to be paid to his wife, and the remaining portion to a daughter during their lives. Mrs. Hunter survived the child, dying in 1922. The following directions were made by the testator, which it seems necessary to incorporate in this opinion, so that a clear understanding may be had of the questions passed on.

"Upon the termination of the last of the said life estates I give, devise and bequeath all my estate and property, real, personal and mixed, and all the rest residue and remainder thereof, unto Doctor J. William White, Doctor John L. Billings and Richard Y. Cook, of the City of Philadelphia, and to the survivors and survivor and remainder of them in Trust nevertheless for the establishment of a Department of Clinical Surgery for the practice of an institution in surgery for the relief of wounded and suffering humanity, which department shall be forever known and designated as 'The Agnew and Hunter Department of Clinical Surgery,' in memory

of Doctor D. Hayes Agnew and my son, Doctor Charles T. Hunter.

"It is my expectation and desire that said department of Clinical Surgery shall be established and conducted by my said trustees, with the aid and assistance of the University of Pennsylvania and as an adjunct to the hospital thereof during the lifetime and continuance in office of said trustees and of the survivor or remainder of them, and, at the death, incapacity, retirement or removal of the last of said trustees, that the same shall be merged and vest in said University of Pennsylvania as herein after provided. This provision of my said Will, however, is to be conditional upon the said University providing and setting apart, on such terms and conditions as shall be satisfactory to my said Trustees, a proper piece of land, convenient to its hospital, as a site for such buildings and their appurtenances, as may be required for the purposes and uses of said Department.

"And, I do hereby authorize and empower my said Trustees to enter into, make and execute such arrangements and agreements with the said University of Pennsylvania in this behalf as to them shall seem meet and proper.

"And, I do further authorize, empower and direct my said Trustees to apply, devote and expend such portions of the corpus or principal of the said Trust property as may be necessary to the erection and construction of such buildings, and the purchase of such furniture, apparatus, and appliances as, in their judgment shall be required, and fit and proper for the establishment and proper equipment of the said Clinical Department of Surgery, and the balance of said Trust property to invest and keep invested in legal investments, and to collect and expend the income thereof towards the support, maintenance and proper conduct of the said Department.

"And, I further will and direct that said Department shall be under the management, direction and control of

my said Trustee or Trustees so long as **one or more of** them shall survive and continue in office, and that they, or the survivor or survivors of them shall have full power and authority to make all needful rules and regulations, and do everything necessary or proper to be done to carry out and effectuate my intentions herein......

"And upon the death, retirement, or removal of the last of said Trustees then I will and direct that the corpus body or principal of the Trust Property, including the buildings which may have been erected as herein before directed, and all other property, funds and investments belonging to said Trust shall pass over and be vested in the said University, as Trustee hereunder, upon and subject to the same trusts on which they were held by their predecessors and with the same power, authority and discretion as was vested in their predecessors aforesaid.

"Unless the said University shall fail to provide an appropriate site for the buildings of said Department, and shall fail or refuse to enter into agreements or covenants satisfactorily to my said Trustees herein named, or to the survivors or survivor of them, in reference to the use of such site, or in reference to the organization and conduct of said Department; in which case I provide that my said Trustees, J. William White, John L. Billings and Richard Y. Cook and the survivors or survivor of them shall have full authority, and I do thereupon direct and empower them, in their discretion, to substitute in place and stead of said University of Pennsylvania, some other medical college or institution which shall be willing to make arrangements satisfactory to them, or, at their election, to purchase a proper site, erect proper buildings thereon, and equip the same as herein before directed, carrying out the object or intent of said trust independently of the said University of Pennsylvania and independently of any other college or institution whatever, in which latter case the institution so founded shall be forever known and designated as

VOL. CCLXXIX—23

'The Agnew and Hunter Institution of Clinical Surgery.' And in the event of my said Trustees substituting some other medical college or institution in place of said University of Pennsylvania, as above provided, then I direct that upon the death, retirement or removal of the last of my said Trustees, that the corpus, body or principal of the trust body, including the buildings which may have been erected as hereinbefore directed, and all other property, funds and investments belonging to said trust shall pass over to and be vested in such college or institution as may be so designated or substituted by my said Trustees, or by the survivors or survivor of them in accordance with the object and intention of this my will."

As noted, Mrs. Hunter is no longer living, and was predeceased six years by her daughter. All of the trustees named likewise died,—the last in 1917,—during the life of the widow. The account now filed is that of the Guarantee Trust & Safe Deposit Company, and the adjudication of it led to the controversy as to the right to the residuary estate. The fund was awarded to the University of Pennsylvania as substituted trustee to carry out the charitable use contemplated by the decedent, as shown by his will. Legatees of the daughter now claim it, insisting the provision made for the medical school violated the rule against perpetuities, and, therefore, the principal passed to them under the intestate laws in force at the time of Hunter's death. It was urged in the court below that no power exists to name a new trustee for those originally designated, to whom had been given peculiar and personal powers, and, further, that the gift was dependent on the granting of a site for the building proposed, making it contingent upon such action by the university, and the requirement had not been complied with.

To reach a proper solution of the problem presented, we are again called on to consider the Act of April 26, 1855, P. L. 328, as amended in section 10 (May 23, 1895,

P. L. 114), and the Act of May 9, 1889, P. L. 173, which
latter act provides: "No disposition of property......
for any religious or charitable use, shall fail for want
of a trustee or by reason of the objects ceasing, or de-
pending upon the discretion of a last trustee, or being
given in perpetuity......but it shall be the duty of any
court......to supply a trustee, and by its decrees to
carry into effect the intent of the donor or testator." A
discussion of the effect of this legislation in light of the
Act of July 7, 1885, P. L. 259, which gave rights to the
next of kin in the case of invalid disposition of property,
as appeared in Penrose's Est., 257 Pa. 231, and Barton
v. Thaw, 246 Pa. 348, is unnecessary in view of the opin-
ion of the present Chief Justice in Toner's Est., 260 Pa.
49. Starting with the Act of 1855, we find a fixed pur-
pose of the legislature to protect and conserve charitable
bequests, though in conflict with the rule against per-
petuities, unless the same are void "for uncertainty, or
the object of the trust be not ascertainable, or has ceased
to exist," in which case the estate reverts to the next of
kin by the terms of the Act of 1885, supra.

The rule referred to does not ordinarily apply to gifts
to charities, because of the legislative directions to the
contrary (Kortright's Estate (No. 2), 237 Pa. 143; Len-
nig's Est., 154 Pa. 209), and if the clearly expressed
purpose of the testator can be accomplished his desires
will be followed though new trustees are required, or
the funds, by reason of altered circumstances, must be
diverted to other like purposes under the cy-pres doc-
trine, though the new use could not be said to express
the exact thought of the donor. Objections made in the
present case, other than to the substitution of a trustee,
which is without merit, resolve themselves into the effect
of the provision in the will that "a proper piece of land"
should be supplied by the university, on which the pro-
posed building could be erected, and it is insisted this
was a condition (Phila. v. Girard's Heirs, 45 Pa. 9)
which might not be carried out within a life or lives in

being, or twenty-one years thereafter, and thus the bequest was defeated. The answer to this must be found in the determination whether or not the residuary estate was vested in some charity, and the furnishing of the land merely a condition as to the manner of carrying it out (Lawrence's Est., 136 Pa. 354; Lilley's Est., 272 Pa. 143), for the general rule against perpetuities has no application to vested estates: Johnston's Est., 185 Pa. 179.

Here, the trustees named in the will were dead, but this did not prevent a substitution, under the legislation applicable, and the estate had vested for a charitable purpose whether ultimately carried out in the building of the University of Pennsylvania, or elsewhere.

The failure, therefore, of the former to strictly comply with the provision for setting aside a piece of land for building purposes did not preclude the court from ordering that the fund be used in the way most likely to effectuate the intent of Hunter, and its decree is therefore approved.

The decree is affirmed at the cost of appellants.