## Riblet's Estate

424

*Bryan, Joslin & Bryan,* for accountant.

*Lyman Shreve, David S. Gifford, J. O. Hertzler, Eaton & Eaton* and *William B. Washabaugh, Jr.,* for legatees.

WAITE, P. J., July 1, 1947.—Alfred K. Riblet died February 17, 1927, leaving a will dated April 20, 1922, which was probated March 9, 1927. After making specific bequests of certain items of personal prop-erty, he gave the life use of the remainder of his estate and the income therefrom to his sister, Anna E. Riblet, upon condition that she pay the taxes, municipal claims, costs of insurance and repairs to the buildings and the expense of the administration of his estate. The said Anna E. Riblet died August 20, 1946. After her death the will directs the sale of all testator's real estate and makes provision for the payment of 34 bequests, three of money and 31 in stocks. Following these bequests, the will further provides, "If any person herein named should die before my death, or my sister's death, their share shall be given equally, to Bertha E. Sanford, Anna M. Walling, Winifred F. Bostwick and Alfred Harrison Bostwick." The four persons named in the above quoted provision are also later named as the eventual residuary legatees of equal one-fourth parts of the residue of the estate. As shown by the audit statement, six of the legatees referred to in the above referred to clause died during the lifetime of Anna E. Riblet, the life tenant, and by reason thereof the legacies given to each of them lapsed and are now a part of the residuary estate distributable

among the four residuary legatees, as provided in the will.

William B. Walling alone qualified as executor of the estate and his first and partial account, showing a balance of $70,579.08, is now before the court for audit and distribution.

The inventory of testator's personal estate, filed March 23, 1927, shows the appraised value of the personal estate at $91,524.48. Of this total valuation approximately $80,000 is made up of common stocks of five large corporations and the preferred stock of one. The testimony shows that testator was an almost daily buyer and seller of stocks in the market.

By agreement, properly signed and filed by the residuary and other legatees entitled to participate in the distribution, with the exception of five, the amount of distribution to be made to the several legatees has been agreed upon and may be made in accordance therewith, so far as funds are available and not prejudicial to other valid bequests in the will.

The five legatees who have not agreed to the suggested distribution, and whose respective legacies are denied as being specific and therefore lapsed or adeemed, are as follows:

| Name of Legatee | Bequests in the Will Stock |
| --- | --- |
| "Young Women's Christian Assn. | 23 shares Midvale Steel" |
| "Boys' Club | 25 shares Westinghouse Airbrake" |
| "Rescue Mission | 30 shares Westinghouse Airbrake" |
| "Mrs. Myrtle Work Duffy | 35 shares Midvale Steel" |
| "John M. Scarlett | 6 shares Westinghouse Airbrake" |

Neither the Midvale Steel or the Westinghouse Airbrake stocks are included in the inventory but it is admitted that at the time of the execution of the will on April 20, 1922, testator was the owner of two certificates of Westinghouse Airbrake stock, one for 100

shares and one for six shares, a total of 106 shares. The will contains six bequests of Westinghouse Airbrake stock, one for 25 shares, one for six shares, one for 30 shares and three for 10 shares each, a total of 91 shares. There are also five bequests, each of 25 shares, a total of 125 shares, of the stock of Midvale Steel. Whether testator owned any Midvale Steel stock at any time does not appear. The above named legatees maintain that these several legacies are general and the estate urges that they are specific.

As to the bequest to the "Rescue Mission", now claimed by the City Mission, there is also the question as to whether the said City Mission is the same organization named in the will as the "Rescue Mission". From the testimony produced at the hearing it appears that both of these names were applied to the same organization and both were doing the same kind of religious and charitable work and having the same officers. The organization was first known as the Rescue Mission and so continued until it was incorporated as the City Mission of the Evangelical Churches of Erie, a nonprofit corporation, in 1924, since which time it has been known by the name of "City Mission", although some of the signs leading to its property include both names, "Rescue Mission" and "City Mission". Its property was located near the place of business of the testator, who for many years, both before and after the change of name, had been a supporter of its work and frequent attendant at its meetings. None of this testimony is denied. This is a charitable bequest and the cy pres doctrine is applicable. See Philadelphia v. Girard, 45 Pa. 9; Kramph's Estate, 228 Pa. 455; Hunter's Estate, 279 Pa. 349; Lockwood's Estate, 344 Pa. 293, quoted page 296; Shand's Estate, 38 Lanc. 53, and Ezra Trim's Estate, 168 Pa. 395. We are, therefore, of opinion that whatever interest in any distribution the Rescue

Mission may have under decedent's will is now payable to the City Mission.

The question as to the right of these several legatees to participate in the distribution of the estate is dependent upon whether they are general or specific bequests. If the bequests are general then distribution should be made to the several legatees. If, on the other hand, any of the several bequests are found to be specific, then they are not entitled to participate in the distribution.

A legacy is a testamentary gift of personal property. Legacies are classified as vested or contingent. An estate is said to be vested in interest when there is a present fixed right in someone to present or future enjoyment of it; it is contingent when either the person who is to enjoy it or the event upon which the estate is to arise, is uncertain. See Johnston's Estate, 185 Pa. 179. In the present estate the legacies to the sister, Anna E. Riblet, and to the eventual residuary legatees, are vested. On the other hand, the 31 legacies of stock following the bequest of the life use to the sister are contingent upon the legatees being alive at the time of the death of the sister. A lapsed legacy is one that was good at the date of the will but fails afterwards by the occurrence of some event before the vesting of their legacy. The bequests to the six legatees who predeceased the sister lapsed and reverted to the estate. Ademption is the extinction or satisfaction of a legacy by some act of testator which indicates either a revocation or an intention to revoke a bequest. See 28 R. C. L. 344.

Legacies are also classified as demonstrative, specific or general. A demonstrative legacy is one referred to a particular fund or service for payment.

If a legacy be given with reference to a particular fund, only as pointing out a convenient mode of payment, it is considered demonstrative, and the legatee will not be disappointed if the fund totally fail. But

where the gift is of the fund itself, in whole or in part, or so charged upon the object made subject to it as to show an intent to burden that object alone with the payment, it is esteemed specific, and consequently liable to be adeemed by the alienation or destruction of the object: Walls v. Stewart, 16 Pa. 275; Welch's Ap., 28 Pa. 363; Wilson's Est., 260 Pa. 407; Cascaden's Est., 8 Phila. 582.

Courts uniformly lean to a construction which shall declare a legacy demonstrative rather than specific: Hammer's Estate, 158 Pa. 632; Wilscn's Estate, 260 Pa. 407.

See 2 Hunter's Pennsylvania Orphans' Court Commonplace Book 861.

"A general legacy or devise is one which, in accordance with the terms of the will, may be satisfied out of testator's estate generally, by delivering all of his estate or any part of it which corresponds with the legacy or devise in value or in general description, and which is not charged upon any specific property": 4 Page on Wills 107. Wilson's Estate, 260 Pa. 407.

See also Sponsler's Appeal, 107 Pa. 95, 101, and Snyder's Estate, 217 Pa. 71.

A specific legacy or devise is a gift by will of a specific article or part of the testator's estate, which is identified and distinguished from all other things of the same kind, and which may be satisfied only by the delivery of the particular thing: 69 C. J. 919; Snyder's Estate, 217 Pa. 71; Walker's Estate, 3 Rawle 229; Smith's Appeal, 103 Pa. 559.

"A bequest of 'my' stocks or bonds, stocks, 'which I hold', etc., is specific": Blackstone v. Blackstone, 3 Watts 335; Horn's Estate, 317 Pa. 49; Hickman's Estate, 122 Pa. Superior Ct. 377.

" 'The' stock is specific": Egan's Estate, 52 Pitts. L. J. 165.

" 'All my stocks (except what I have given to A)' is specific": Klenke's Estate, 210 Pa. 575.

See Hunter, supra, vol. 2, p. 858, 20 (*a*) and (*b*).

But, A legacy of stocks or bonds, without words or identification or ownership, is a general legacy, though the testator gives exactly the amount he has in hand; and if none such is owned by the testator at the time of his death, the legatee may elect to take the value in cash rather than have the executor purchase it for him: Sponsler's Appeal, 107 Pa. 95; Snyder's Estate, 217 Pa. 71; McGaw's Estate, 85 Pa. Superior Ct. 545; Semple's Estate, 61 Pitts. L. J. 382; Young's Estate, 16 Del. Co. 407; Autenrieth's Estate, 8 D. & C. 681.

See Hunter, supra, vol. 2, p. 859.

In the words of the will of Alfred K. Riblet, the several bequests of stock are simply made as a certain number of shares of stock of the designated corporations to a named legatee as shown in the several bequests in question as quoted above. The stock is not referred to as "my shares" or any particular share. The only other reference in the will to the several bequests of stock is in the paragraph immediately preceding these several bequests, which is as follows:

"I give, devise and bequeath unto the following named persons, their heirs and assigns, the following stock certificates as stated."

The words, "stock certificates", do not designate any particular stock certificate. Stocks are always represented by certificates and the word "certificates" as here used adds nothing in the way of designating any particular stock or certificate. The words "stock" or "stock certificates" are not referred to or limited to "my stock" or "my stock certificates" or in any way limited or referred to any particular stock certificate. In fact, the only certificates of Westinghouse Airbrake stock which testator owned that represented the number of shares bequeathed is the bequest to John M. Scarlett for six shares of said stock. It is to be noted that in the petition and agreement of the residuary legatees to pay certain bequests there is included an

offer or agreement to pay to said John M. Scarlett the sum of $300 to satisfy a bequest of six shares of the Westinghouse Airbrake stock. It is further to be noted that said agreement also includes the payment to several other legatees of stock, including at least three other legacies of Westinghouse Airbrake stock, totaling an aggregate value of between $8,000 and $9,000, in addition to five bequests of Midvale Steel stock and several other bequests of stocks, the value of which is not shown. This appears to be an acknowledgment by the representatives of the estate and by the residuary legatees that the several bequests of stock are general and not specific. Taking the entire will into consideration, together with all the surrounding circumstances as shown by the testimony and the record and, in view of the authorities herein cited, we are clearly of the opinion that the legacies to the said five legatees hereinbefore referred to are general bequests and that said legatees are entitled to participate in the distribution of the estate.

Generally, a testamentary writing should be construed to speak as of the time of testator's death, unless a contrary intention appears in the writing. See Wills Act of June 7, 1917, P. L. 403, 20 PS §221. Though a will ordinarily will be construed to speak as of the time of testator's death that rule will not be applied when a contrary intention appears. See Annear's Estate, 29 Dist. R. 44. The ninth paragraph of testator's will provides as follows:

"After the death of my sister, aforesaid, viz., Anna E. Riblet, I authorize empower and direct the Executors hereinafter named of my estate, to sell either at public or private sale as in their discretion may seem best, all of the real estate of which I may die seized or to which I may be entitled at the time of my decease, and to give a good and sufficient deed or deeds therefor and sell all personal property not otherwise disposed of and the proceeds thereof, together with the re-

mainder of my estate, less necessary expenses, shall constitute one fund which shall be distributed divided by executors in accordance with the following directions and bequests:"

Under the wording of the above quoted paragraph of the will, we are clearly of the opinion that these 31 bequests of stock are to be identified as they existed at the time of testator's death. These several bequests vested at the time of decedent's death contingent upon the several legatees surviving the life tenant and their several values must be determined as of August 20, 1946, the time of the death of the said life tenant.

As shown by the testimony of Fred C. Barrett, a securities broker, and also a letter signed by said broker and by a stipulation admitted in evidence, both based upon the official market quotations as of the death of Anna E. Riblet, to wit, August 20, 1946, were as follows: Westinghouse Airbrake stock at $35.75 per share, an equivalent of $143 per share of the original stock, the same having been split four for one in 1927. The said stipulation shows that the market value of the equivalent of the Midvale Steel stock at the same date was $4 per share.

Ordinarily, it would seem to be optional upon a legatee who is bequeathed securities either to accept the cash value of the securities at the time of the award or to require the delivery of the securities themselves, even though there be no such securities in the estate, in which case it would be encumbent upon the fiduciary to purchase the necessary securities to satisfy the bequests. (See 2 Hunter's Pennsylvania Orphans' Court Common Place Book, Legacies and Devises, §20(c), citing Autenrieth's Estate, 8 D. & C. 681. But, in the instant case, the will directs that after the death of the life tenant, Anna E. Riblet, all property, both real and personal, shall be sold "and the proceeds thereof, together with the remainder of my estate, less neces-

sary expenses, shall constitute one fund which shall be distributed divided by my executors in accordance with the following directions and bequests:" See the ninth paragraph of testator's will, quoted in full herein. In view of the language of the will itself, the five bequests herein in question are, in our opinion, payable not by a delivery of the securities themselves but by payment of their cash equivalent as of August 20, 1946, the date of the death of the life tenant. Under the conclusions we have reached, these legacies are pecuniary and the time of payment thereof and the rate of interest thereon are governed by the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 21, as amended by the Act of June 24, 1939, P. L. 714, sec. 1, which provides in part as follows:

". . . on all pecuniary legacies payable at a future period or upon contingencies or under other circumstances by which the payment and satisfaction of such legacies may be postponed or may not take place until a distant period after the death of such testator, interest at such rate, shall begin to run from the time when such legacy becomes payable."

See 20 PS §633, Cumulative Annual Pocket Part.

The rate at which the interest upon the several legacies are to be computed should be based upon the average yearly earning of the estate since the date of the life tenant's death and not upon the legal rate of six percent, unless the annual earnings should exceed the legal rate, in which case the limit would be six percent. See Loughin's Estate, 41 D. & C. 678.

Since there is now no stock of either of these companies in the estate, it is directed that the said legatees be awarded the cash equivalent of these several bequests as of August 20, 1946, together with the interest thereon computed as above directed.

An order of distribution is directed to be made in accordance herewith.