## Salvation Army Petition

*Alexander, Clark & Stewart,* for petitioner.

WAITE, P. J., sixth judicial district, specially presiding, September 6, 1950.—This matter is before the court on a petition for a decree authorizing (a) "The purchase of a certain parcel of land now owned by Nellie E. Lounsbury, fronting on Market Street in the Borough of Warren, Pa., and adjoining a certain piece or parcel of land owned by a local organization of the Salvation Army of Pennsylvania now under

option to petitioners at a price of $25,000." and (b) "The erection thereon (at a cost not to exceed $35,000) of an addition to petitioners' existing building;" (c) for the purpose of "instructing children of Warren County and elsewhere in agriculture, other vocations and common educational subjects", and (d) "Providing a refuge for children where they may enjoy recreation and training under influences that will result in their attaining a high character in their callings and becoming useful citizens."

From exhibit A attached to petitioner's brief it appears that as of March 31, 1950, there was in the said "Cobham Fund" the sum of $112,245.69, which we are informed that by reason of careful management and investments is now producing an annual income of more than $500 per month.

Henry Cobham and Ann Cobham, his wife, from whose estates the "Cobham Fund" originated were heirs and legatees of George Ashworth Cobham, who came originally from England, and having acquired the property known as Stonylonesome situated on the hills in Glade Township of Warren County, Pa., northeast of the present Borough of Warren, Pa. "Stonylonesome", having a large home erected thereon bearing the same name, originally consisted of 150 acres of land, which by a later purchase was extended to the north bank of the Allegheny River and contained at one time approximately 1,000 acres of land more or less (see Pennsylvania Supreme Court cases cited in the next paragraph relating to the same trust estate) and which came into possession of Henry Cobham and Ann Cobham, his wife, on the death of George Ashworth Cobham on October 6, 1870.

There has been some litigation relative to this property (see Sager v. Mead, 164 Pa. 125, and 171 Pa. 349 and Salvation Army v. Lawson, 293 Pa. 459) but so

far as appeared no title adverse to that of Henry and Ann Cobham has ever been established. The record seems to show that Henry and Ann Cobham, his wife, continued in possession of the Stonylonesome estate up to the time of their death.

On February 16, 1907, Henry Cobham and Ann Cobham, his wife, of Stonylonesome, Warren County, Pa., entered into a trust agreement with the Salvation Army, a religious corporation incorporated under the laws of the State of New York having its principal office in the City of New York, transferring to it certain securities having an aggregate value of $27,800, in addition to the Stonylonesome estate, subject to a life estate of the grantees to the use of the Stonylonesome estate together with the royalties from certain oil leases covering the Stonylonesome estate and subject after their respective deaths to certain annuities amounting to $400 per year to F. A. Hodges for the joint support of F. A. Hodges and a brother and sister, all of whom, as the record shows, are now deceased and the reservations and annuities fully paid.

In consideration of this grant and conveyance, in addition to the payments above referred to, the Salvation Army agrees as follows:

"First. To erect and maintain buildings as a refuge and school for children where practical farming together with a general common school education shall be taught. The children to be taught in a kindly manner to work so that each one of them may attain a high character in His calling and thus become a useful citizen of the Commonwealth, fitted to conduct a farm in the usual way or to take up a tract of land for his own benefit. The building or buildings above mentioned to be erected a short distance North of the residence of Stony Lonesome if such be deemed practicable by the Party of the First Part."

To clarify the terms of the trust agreement, on November 19, 1912, Henry Cobham wrote a letter, the essential parts of which are as follows:

"In order to avert any possibility of misunderstanding as to the objects of the trust which the Salvation Army has assumed in order to carry out the wishes of my devoted wife and myself, I deem it best that I should set the matter forth at this time in a definite public statement.

"It had long been our desire to establish a refuge and school for orphan or neglected children where practical farming, together with a general common school education should be taught under influences that would result in early attaining a high character in his calling and thus become useful citizens of the Commonwealth . . . I desire also to make it very clear that the Salvation Army has not received any benefit to its funds from this trust. It has assumed very great responsibilities for which it is eminently fitted as it now has various institutions of this character throughout the country and it has my very great thanks for undertaking to carry out my wishes after my death. No part of the money can be devoted to the local work of the Salvation Army for it must all be expended in the interest of the Children's Refuge for Warren County and elsewhere.

"Feeling unable to care for the place any longer I assign it to the Salvation Army who are already making improvements thereon."

On February 20, 1907, Ann Cobham signed and executed her last will and testament which, after her death on November 10, 1912, was duly probated. The essential parts of the will so far as this proceeding is concerned are as follows:

"To have and to hold the bequest hereby granted for the benefit of and for the following uses and purposes, not inconsistent with my last will and testament,

as The Salvation Army and its successors or assigns may from time to time adopt. To erect and maintain buildings as a refuge and school for orphan children where practical farming, together with a general common school education shall be taught; the children to be taught to work with kindness to one another so that each one of them may attain a high character in his calling, and thus become useful citizens of the Commonwealth, and well fittted to conduct a farm in the usual way or take up a tract of land for his own benefit. The building or buildings above mentioned to be erected a short distance north of the residence of Stony Lonesome if such be deemed practicable by my Legatee aforementioned."

On July 16, 1913, Henry Cobham signed and executed his last will and testament, which after his death on August 15, 1915, was duly probated. The essential parts of the will so far as this proceeding is concerned are as follows:

"Second: I hereby confirm in all respects the will of my beloved wife, Ann Cobham, bearing date the twentieth day of February, A.D. 1907, and probated before the Register of Wills of Warren County, Pa., on the twentieth day of November, A.D., 1912.

"Third: I give, devise and bequeath all the rest, residue and remainder of my estate of whatsoever kind and wheresoever situate, to the Salvation Army, a religious and charitable corporation duly organized under the laws of the State of New York."

On July 28, 1943, a petition for leave to sell the Stonylonesome estate at private sale was presented to the Orphans' Court of Warren County, at June term, 1943, no. 39. After due and careful consideration the court, by a decree entered on July 28, 1943, directed the sale of the property as prayed for.

Stonylonesome is therefore no longer a part of this trust estate and the erection of a school building

thereon in literal compliance with the direction of the terms of the trust agreement of February 16, 1907, the letter of November 19, 1912, and the last will and testaments of Henry Cobham and Ann Cobham is no longer possible. Although the buildings for the school cannot now be erected on the Stonylonesome estate as requested, the court is fully satisfied that the erection of the school for children as prayed for in the petition now before the court would meet with the hearty approval of both Henry Cobham and Ann Cobham.

In our opinion this is a case for the application of the cy pres doctrine, which is defined in Ballentine's Law Dictionary, page 324, as follows:

"A doctrine employed in the interpretation and administration of charitable trusts that where a function or duty is to be performed which cannot be done in exact conformity with the plan of the person who has provided therefor, such function or duty will be performed with as close approximation to the original plan as is reasonably practicable. See 14 L. R. A. (N. S.) 59, note.

"Cy Pres means 'as nearly as may be'. The doctrine is a simple rule of judicial construction, designed to aid the court to ascertain and carry out, as nearly as may be, the intention of the donor of a gift to provide for the future. It is properly applied only where it is or has become impossible beneficially to apply the property left by the founder or donor in the exact way in which he has dictated it to be applied, and it can only be applied beneficially to similar purposes by different means. See 5 R. C. L. 365."

In the famous Girard College case, City of Philadelphia v. The Heirs of Stephen Girard, 45 Pa. 9, at page 28, Chief Justice Lowrie defines the cy pres doctrine as follows:

"The meaning of the doctrine of cy pres, as received by us, is, that when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close approximation to that scheme as reasonably practicable; and so, of course, it must be enforced. It is the doctrine of approximation, and it is not at all confined to the administration of charities, but is equally applicable to all devises and contracts wherein the future is provided for, and it is an essential element of equity jurisprudence."

There is now in the trust (the Cobham fund) as of March 31, 1950, a sum amounting to $112,245.69. The cost of the land upon which it is proposed to erect the buildings as a school and refuge for children is now under option at a price of $25,000. It is estimated that the cost of erecting the buildings will be between $25,000 and $35,000. Inasmuch as the buildings when erected will have to be maintained, and the expense of operating the school and refuge paid, out of the balance remaining in this trust fund, the cost of the erection of the buildings should, in our opinion, be limited to $35,000. Deducting the cost of the land, namely, $25,000, and the cost of the buildings amounting to $35,000, will leave in the Cobham fund a sum in excess of $52,000, the income from which can be used from time to time as needed to maintain the buildings and to pay the expense of operating the school and refuge.

In Pennsylvania Orphans' Court Commonplace Book, vol. 1, sec. 19(a) at pages 109-110, it is said:

"The meaning of the doctrine of cy pres, as received by us, is, that when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as

close approximation to that scheme as is reasonably practical; and so, of course, it must be enforced. It is the doctrine of approximation: Phila. v. Girard, 45 Pa. 9; Kramph's Est., 228 Pa. 455.

"If the clearly expressed purpose of the testator can be accomplished, his desires will be followed though new trustees are required, or the funds, by reason of altered circumstances, must be diverted to other like purposes under the cy pres doctrine, though the new use could not be said to express the exact thought of the testator: Hunter's Est., 279 Pa. 349.

"The rule of equity on this subject seems to be clear, that, when a definite charity is created, the failure of the particular mode in which it is to be effectuated does not destroy the charity, for equity will substitute another mode, so that the substantial intent shall not depend on the insufficiency of the formal intention: Phila. v. Girard, 45 Pa. 9; Mear's Est., 299 Pa. 217."

Based upon the facts in the instant case the cy pres doctrine is, in our opinion, manifestly applicable and controlling.

I am advised that the public school authorities of the Borough of Warren are willing to and will coöperate with the officers of the Salvation Army in carrying out the purposes of this school.

The Salvation Army is a most commendable charitable organization. The record shows that the funds of this trust estate have been especially well and economically administered.

The court is satisfied that the proposed home for the education of children will be carefully and economically built and administered for the education and general care of the children that may be admitted therein and this will be done in compliance with the generous and beneficent bequest of Henry and Ann Cobham. The prayer of the petition is therefore

granted and the court makes the following final order and decree in compliance with the provisions of the Act of April 26, 1855, P. L. 328, sec. 10, as amended by the Act of May 23, 1895, P. L. 114, sec. 1, 10 PS §13.

### Final Order and Decree

And now, to wit, September 6, 1950:

1. The Salvation Army, a charitable corporation of the State of New York, be and is hereby relieved from any obligation of erecting or maintaining any buildings on the Stonylonesome estate for the purposes stated in the written indenture dated February 16, 1907, between it and Henry Cobham and Ann Cobham and in the respective wills of said persons solely out of the income of the funds and property received by it from Henry Cobham and Ann Cobham under the written indenture and under the last will and testament of either of them.

2. The Salvation Army is hereby authorized to use the principal and income of the funds and property received by it from Henry and Ann Cobham under the written indenture dated February 16, 1907, and under the last wills and testaments of Henry and Ann Cobham, together with other funds of petitioner, for the purpose of (a) acquiring the abutting parcel of land now under option to petitioner at a cost of $25,000, (b) erecting thereon at a cost not to exceed $35,000 an addition to petitioner's existing building, (c) instructing children of Warren County and elsewhere in agriculture, other vocations and common educational subjects, and (d) providing a refuge for children where they may enjoy recreation and training under influences that will result in their attaining a high character in their callings and becoming useful citizens of the Commonwealth of Pennsylvania, the administration of such funds, the method of such in-

struction and the manner of conducting and the nature of such refuge to be in the sole discretion of the Salvation Army.