## Vogan Estate

*H. Clay Burkholder*, for petitioner.

BOWMAN, P. J., January 26, 1951.—John Vogan died in the year 1863, leaving a will of record in the office of the Register of Wills of Lancaster County in Will Book X, volume 1, at page 575, whereby, in the fifth paragraph thereof, he created a trust as follows:

"I give and bequeath, to C. S. Hoffman and William H. Rhoads, both of Voganville, and their successors, the sum of Two Thousand Dollars, in Trust as a perpetual fund to be and remain for ever hereafter, for the use of the poor and indigent families, for the time being, residing in Voganville, in the following manner: The said Trustees shall put out and keep at interest, the said sum of Two Thousand Dollars, on good land security at five and a half per centum. And the said Trustees and their successors, shall annually expend said interest or so much thereof as will be needed, for Fuel for the said poor and indigent families residing in said Village, sufficient to last during the three months of December, January and February in each winter. The said sum shall be put out at interest and the interest to commence accruing on the first of April following my decease. And the first stock of fuel shall be furnished, in one year thereafter, and so every succeeding year, the interest falling due on the first of April, shall be taken to furnish the fuel for the next coming months of December, January and February. And in case the interest of any year, will not be all needed, the surplus shall be irrevocably added to the principal; and if in any year the interest should be insufficient to furnish the whole stock of fuel needed, then it shall be furnished prorata."

On June 22, 1950, the Farmers Bank and Trust Company of Lancaster, succeeding trustee of the trust, by leave of the Attorney General of the Commonwealth of Pennsylvania, presented a petition to this court, praying the court to invoke the doctrine of cy pres and direct that any surplus of income remaining after the

fulfilment of trust purposes be paid to the Voganville Union Cemetery Association for the care and maintenance of Voganville Union Cemetery. The petition, which is joined in by 84 of the 88 adult residents of the Village of Voganville, Lancaster County, avers that the income derived annually from the trust fund is greatly in excess of the amount needed to carry out the stated purposes of the trust, that all income of the cemetery association is derived from two small trust funds which net an average annual income of approximately $49.79, that the average annual cost of maintaining the cemetery during recent years has been $262.23, and that the award from surplus income of the John Vogan fuel trust, as prayed, would be in accordance with the testator's wishes.

From the petition and the testimony presented at the hearing in the matter it appears that Voganville was named after decedent. On March 31, 1849, he conveyed certain land then owned by him to one John Hunsberger, in trust, to be used as a free burial ground for the people or inhabitants "of the surrounding neighborhood". This is the land which now comprises the Voganville Union Cemetery in which decedent was buried. In the sixth paragraph of his will he gave $200 to his executors "to complete the wall around the grave yard, at the Voganville Meeting House, and to be otherwise applied to the use of the said House, as they may see proper". In paragraph eight of his will decedent directed his executors to expend the sum of $1,000 "in making the road from the cross roads in Voganville to the Meeting House in said Village". The obvious purpose of this testimony as stressed by counsel for petitioner at the hearing is to show decedent's interest in the community generally and particularly in the cemetery which he made possible.

The testimony also discloses that the adult residents of the village are either gainfully employed or have

incomes from other sources adequate for their present well being and support.

As of August 15, 1950, the principal of the trust amounted to $4,410.39. The balance of unexpended income as of that date was $307.39. Fuel was last purchased on February 2, 1948. There have been no additions to the principal account from income since October 29, 1936, at which time a transfer of $207.87 was made.

The doctrine of cy pres is of ancient origin. It is the doctrine of approximation. Its meaning is "when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close *approximation* to that scheme as reasonably practicable; . . .": City of Phila. v. Girard's Heirs, 45 Pa. 9, 28. See Williams Estate, 353 Pa. 638, 643; Curran's Estate, 310 Pa. 434, 445.

The doctrine is clearly enunciated in A. L. I. Restatement of the Law of Trusts §399:

"If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor."

If the clearly expressed purpose of testator can be accomplished, his desires will be followed: Hunter's Estate, 279 Pa. 349, 355.

Under these principles the sole question here involved is whether or not the original gift has failed or has become impractical of fulfillment. It is the considered judgment of this court that neither of these conditions exists. The circumstances that no one re-

siding in Voganville is presently in need of fuel does not call for the exercise of the court's cy pres power. While it is to the credit of the residents of Voganville to feel that they are not in need of the full beneficence which John Vogan by his will provided, it cannot be foretold with any degree of certainty when and to what extent there may be a change in existing circumstances. During the five years of 1945 to 1949, both inclusive, the average gross income from the trust was $146.29. It could hardly be contended that such annual income is excessive. Aside from this, it must be remembered that decedent by his trust provided for poor and indigent families. To award a portion of the annual income to the upkeep and maintenance of the cemetery would be for a purpose so dissimilar to decedent's express direction as to do violence to it. See Williams Estate, supra.

The petition filed June 22, 1950, is dismissed.